Peter Leroy ORTIZ, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18253.

United States Court of Appeals Ninth Circuit.

June 5, 1963.

Rehearing Denied Aug. 7, 1963.

Elinor Chandler, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Section, and William D. Keller, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS and BARNES, Circuit Judges, and WEIGEL, District Judge.

BARNES, Circuit Judge.

The appellant was indicted in Count I for sale and in Count II for possession, on March 1, 1962, of the same amount of heroin. (21 U.S.C. § 174.) He was found not guilty as to the first count and guilty as to the second, i. e., possession. Codefendant Cortez pleaded guilty to Counts I and II, codefendant Gomez pleaded guilty to Count III. Appellant was not involved (as were other indicted defendants) in Counts III and IV.

Jurisdiction existed below in Title 18, United States Code, Section 3231, and exists here in Title 28, United States Code, Sections 1291 and 1294.

Appellant alleged as error:

1. The admission of hearsay testimony of oral conversations between codefendant Cortez and Officer Renteria, allegedly had on February 28, 1962.

2. The admission of hearsay concerning a telephone conversation between the same two parties on the same date. (See Reporter's Transcript pages 16 and 17.)

3. The admission of hearsay testimony of oral conversations between Officer Renteria and codefendant Cortez on March 1, 1962.

4. The introduction of admissions and confessions made at the time of arrest.

Appellant urges such admissions and confessions are inadmissible because (a) induced by the alleged illness of the defendant; (b) given while the defendant was under the influence of narcotics; and (c) given with a promise of leniency, i. e., that appellant would be favored with a low bail of $1,000, as compared with the $10,000 and $25,000 set for the other defendants.

The theory of the government is that the first conversation was not hearsay, but offered, not to prove the truth of the matter asserted, but "merely introductory and offered to show the context within which the parties (other than the appellant) were acting." This is a valid theory for the introduction of evidence proving the fact conversations between "X" and "Y" took place; not necessarily proving, or offered to prove, the truth of what was said in such conversations. Busby v. United States, 9 Cir. 1961, 296 F.2d 328, 332. It was not offered as binding on the appellant, but merely as preliminary information permitting the trier of fact to learn the circumstances surrounding the matter.

The government's position as to the second conversation was that it was hearsay as to the appellant, but is admissible as an admission by an agent participating in a common scheme or joint concert of action with other defendants. See Fuentes v. United States, 9 Cir. 1960, 283 F.2d 537. As was pointed out in that case, the sole question for this court to determine is whether there existed adequate independent evidence of a concert of action between the third party whose testimony was given and the defendant. See Williams v. United States, 9 Cir.

1961, 289 F.2d 598. The government recognizes this obligation to prove such common scheme, and asserts it had by quoting eleven matters indicative of a criminal conspiracy or plan (keeping in mind the appellant's name, "Leroy"):

"(1) Following Renteria's conversation with the defendant Cortez relative to the purchase of narcotics, he overheard a telephone conversation of Cortez in which she asked if she was speaking to Leroy and then asked if the party on the other end of the line had heroin. (2) Defendant Cortez then stated to Renteria that she had conversed with Leroy and would call him again the next afternoon to see if he had been able to obtain a quarter ounce of heroin. (3) On March 1, 1962, Cortez stated that Leroy called at her apartment in the morning and, upon learning that she did not have the money with her, requested her to call at one o'clock that afternoon regarding the purchase of narcotics. (4) Renteria was present at one o'clock that afternoon when Cortez dialed the number CApitol 1–1212. Renteria overheard Cortez ask for Leroy. He then overheard Cortez tell an individual by the name of Norma that they would park down the street from the house. The phone number at the Ortiz residence was CApitol 1–1212. The wife of the defendant Ortiz is named Norma. (5) The Deputy then drove the defendant Cortez to Peter Leroy Ortiz' home at 1268 Isabella Street. On the way Cortez said that Norma had instructed her to park down the street from the house. (6) Renteria parked his car near the Isabella Street address, and saw Peter Leroy Ortiz arrive in a car. Defendant Cortez then exited Renteria's car, joined appellant Ortiz and entered Ortiz's home with him. (7) Cortez returned minutes later and stated: 'Leroy has got the stuff. He wants the money.' Renteria then stated that he would not make payment until he had received the narcotics;

whereupon Cortez left and returned to Ortiz's home. (8) The defendant Cortez returned to the car with the narcotics and requested payment from Renteria. (9) While driving away from the Ortiz residence Cortez stated 'Leroy didn't want to meet you.' (10) In response to the deputy's question as to her source Cortez replied that it was Leroy. (11) The appellant Ortiz confessed the sale of narcotics here in question to Federal Bureau of Narcotics Agent Francis Briggs and other law enforcement officers."

██ We conclude the foregoing evidence is sufficient to create an issue of fact, legitimate, substantial, and honest, as to whether a common scheme or plan involving appellant in the possession of narcotics was proved. The trial court made his determination, and we cannot hold it clearly erroneous. We are required to consider the evidence, at this stage, most favorably to the prosecution. Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

██ The eleventh act, of course, was the confession itself and its admissibility is a matter for the trial court to preliminarily pass upon. "Whether a confession is voluntary depends upon the facts that surround it, and the judge's decision is final as to its competence except in those cases * * * in which his finding of fact is plainly untenable." Justice Learned Hand in United States v. Gottfried, 2d Cir. 1948, 165 F.2d 360 at 367. As we have pointed out this discretion vested in the trial court judge is "a very large discretion" which is not to be disturbed upon appeal "unless a clear abuse thereof" is shown. We find no abuse of discretion in the admission of the confession here. The fact that the defendant's bail was placed at $1,000, rather than $10,000 or $25,000, indicates the belief of the police officers that appellant was not a primary *source* of heroin, but merely one who aided in its sale, and hence might be invaluable as an informer leading to the arrest of higher-ups if he were permitted his liberty on low bail.

There is no reasonable basis for inferring that the low bail was an inducement to confess rather than for the purpose outlined here.

■ Appellant contends that his confession was invalidated because he was experiencing withdrawal symptoms at the time of his questioning; that he had a bloody nose, cramps, and sank to the floor during the interrogation. Any such conduct or condition was denied by the officers present at the time of confession, and hence there exists a conflict in the evidence which the trier of fact alone must determine.

We would be less than frank were we not to admit that once it has been established a defendant has been given or has taken narcotics within a short time prior to a confession, his testimonial capacity is properly and instantly brought into issue. As Wigmore states in his monumental work on Evidence (3d ed., § 841(2)), "A confession made while * * * under the influence of a narcotic is governed by the general principle of testimonial capacity, and is therefore usually held admissible * * *."

And at § 499, as Wigmore again states: "The question is * * * whether the witness was so bereft of his power of observation, recollection or narration that he is thoroughly untrustworthy as a witness on the subject at hand." United States ex rel. Jackson v. Denno, 2 Cir. 1962, 309 F.2d 573. A reading of the record gives no indication that the influence of the narcotic drug affected appellant's ability to comprehend questions, or that he was incoherent. He apparently answered all questions coherently and in an intelligible manner. He remembered what he stated at that time, for he never denied his confession, but remembering what he had then said, denied at the trial he had told the truth.

■ There is no question but that there is no evidence the appellant had actual possession of the narcotics. There is sufficient evidence, however, to raise the evidentiary question as to whether he had constructive possession thereof. The trier of fact concluded that he had. We cannot reassess the evidence, nor in the absence of clear error, disturb the decision of the trier of fact below.

Finding no error, we affirm.