**Martin Nelson KAY, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 23455.**

United States Court of Appeals,
Ninth Circuit.

Feb. 10, 1970.

---

Michael Hannon (argued), of Gorman, Hannon & Ashman, Los Angeles, Cal., for appellant.

Larry Flax (argued), Asst. U. S. Atty., Edward J. Wallin, Robert L. Brosio, Asst. U. S. Attys., Wm. Matthew Byrne, Jr., U. S. Atty., Los Angeles, Cal., for appellee.

Before HAMLEY, CARTER and KILKENNY, Circuit Judges.

KILKENNY, Circuit Judge:

Appellant and Burnett Alex Miller were jointly charged in a two count indictment with concealing cocaine in violation of 21 U.S.C. § 174 and selling cocaine without an order form in violation of 26 U.S.C. § 4705(a). A jury found appellant and his co-defendant guilty on both counts. Appellant was sentenced to seven years on each count, the sentences to run concurrently. He appeals. We affirm.

The events leading up to the indictment commenced in May, 1968, at which time Frank G. Tarallo, an undercover agent of the Federal Bureau of Narcotics, received a call from an unidentified person who said that appellant was selling narcotic drugs. The unidentified person gave the agent a number to call and told him to ask for "Marty". On

May 13th, he called appellant's number, but was first told that he "sounded like a policeman". The agent said fine, but continued the conversation and was told by appellant that he knew of four "pieces", indicating four ounces of cocaine, which was then with a friend. Asked how much he wanted for it, appellant said $3,400.00. The agent then inquired as to whether it was good cocaine and was told that it was, appellant adding that "it was from Mexico". The agent then said that he could not make the $3,400.00 figure, but that he could pay $2,800.00. The appellant said he would have to talk to his people, and that he would return the call to the agent at 8:00 or 9:00 o'clock that evening. Later that night, the agent was called by appellant and told that his people would accept $2,800.00. A meeting was then arranged for the following morning at 8:30. In a telephone conversation the next morning, the appellant asked if the agent had the $2,800.00 and the agent asked the appellant if he had the cocaine. Each said that he did. Appellant then said that a man by the name of Mike would call the agent within a few minutes. A short time thereafter, another individual called. It was later found out that this was co-defendant Miller. Miller, in this conversation, stated that his name was Mike and he asked if the agent had the $2,800.00. The agent responded by asking if he had the "coke".[1] Each again responded affirmatively. They agreed to meet in a parking lot.

After arranging for $2,800.00 in official advance funds, the agent proceeded to the designated parking lot, followed by other agents in a surveillance vehicle. When the agent arrived, he noticed a person standing by a vehicle in the parking lot. He called out "Mike". Miller responded, "Yes". They then introduced themselves. Miller said he had the "stuff" and that it was across the street with appellant in a Volkswagen. Asked if the stuff was good, Miller responded that it was very good and that it was from Mexico. Miller then directed the agent to drive across the street to another parking lot. When they arrived, the appellant, who was driving the Volkswagen, parked along the left side of the agent's car. When appellant drove up, the agent said "Marty" and he responded, "Yes". Miller then told appellant to give the agent the "stuff". Appellant opened the glove compartment and handed the agent two prophylactics containing a white powdery substance. The agent, an expert in the field, immediately recognized the substance as cocaine. When handed the packets, the agent gave a signal to the surveillance agents to converge for the arrest. Nothing happened. There was more talk between them and at this point the agent indicated that the money was in the trunk. The three then proceeded to the rear of the agent's vehicle and as the agent opened the trunk the surveillance agents converged upon the scene and arrested the appellant and his co-defendant Miller.

■ With one exception, appellant's assignments of error depend upon the testimony adduced at the time of trial and the trial court's ruling on the admission of part of the testimony. Appellant is represented by retained counsel. Appellant did not file a transcript of the testimony. Hence, for a resolution of the factual issues, we must rely on the partial transcript filed by appellee. Appellant charges that the pre-arrest statements of Miller concerning the foreign origin of the cocaine, and other statements implicating appellant, were improperly admitted in evidence. The partial transcript reveals that both appellant and Miller, independent of each other, told the agent that the cocaine came from Mexico. The trial court limited consideration of the statements to the declarant in each case.

Appellant argues that Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20

1. Later identified as cocaine.

L.Ed.2d 476 (1968), requires a reversal. The case, of course, must be analyzed in the light of its factual surroundings. Bruton and his co-defendant were jointly charged with the federal crime of armed postal robbery. A postal inspector obtained an oral confession from the co-defendant while the latter was in custody on state criminal charges. Clearly, any common plan or scheme to commit the crime, which may have existed between Bruton and his co-defendant, terminated when the co-defendant was arrested and taken into custody. Here, if we believe the agent, we have statements of the appellant and his co-defendant made *during* the course of the common plan or scheme which ultimately culminated in the delivery of the cocaine by the appellant to the agent on the date charged in the indictment. Here, all statements are pre-arrest and, if we believe the agent, were made during the course of the common plan.

It is well settled that admissions and statements of a co-defendant are admissible against another defendant even in the absence of a conspiracy count in the indictment, provided there is sufficient independent evidence of a concert of action between the defendants. Fuentes v. United States, 283 F.2d 537 (9th Cir. 1960). Here, we have eyewitness evidence that appellant and his co-defendant actually participated in the action leading up to and in the delivery of the cocaine. This conduct, of course, is direct evidence of a common scheme or plan to violate § 174. Ortiz v. United States, 318 F.2d 450 (9th Cir.1963); Fuentes v. United States, *supra*; Williams v. United States, 289 F.2d 598 (9th Cir.1961). After verdict, we are required to consider the evidence in the light most favorable to the prosecution. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Latham v. United States, 407 F.2d 1 (8th Cir. 1969); Pederson v. United States, 392 F.2d 41 (9th Cir.1968); Yeargain v. United States, 314 F.2d 881 (9th Cir.

1963). Where, as in *Bruton*, the chief objective of the conspiracy has ended, either in success or failure, the extra-judicial statements of a co-defendant are not admissible. Atkins v. United States, 307 F.2d 937 (9th Cir.1962); Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931, 62 A.L.R.2d 1344 (1957). Here, however, that is not the case.

A discussion of United States v. Guajardo-Melendez, 401 F.2d 35 (7th Cir. 1968), relied upon by appellant, is in order. Although the Court in *Guajardo* did not recognize a distinction between a pre-arrest statement made in the course of a joint arrangement or plan and a statement made after the plan had been terminated and the defendant placed in custody, it does seem to extend *Bruton* to cover pre-arrest statements made in the course of a joint plan or arrangement. The decision in *Guajardo*, in our view, could well have rested on the premise that there was no proof of a concert of action between the appellant and his alleged co-conspirator. Certainly, there was no evidence in that case, as there is here, that appellant actually delivered the heroin to the agent. The challenged statements of the co-defendant in that case are the only evidence that the appellant ever had possession of the heroin in question. Moreover, the decision in *Guajardo* has been considerably eroded in its own circuit by United States v. Hoffa, 402 F.2d 380 (7th Cir.1968), remanded 394 U.S. 310, 89 S.Ct. 1164, 22 L.Ed.2d 297 on search and seizure issue. Be that as it may, *Guajardo* seems to be in direct conflict with the cited decisions of our own circuit. Perhaps *Bruton* might be distinguished on still another ground. Appellant did not take the witness stand. However, we need not decide whether this record is tailored to fit the pattern of Santoro v. United States, 402 F.2d 920 (9th Cir.1968); Ignacio v. People of Territory of Guam,

413 F.2d 513 (9th Cir.1969), and similar authorities.

■ Next, appellant contends that he was prejudiced by the trial court's denial of his motion for a separate trial. Appellant's motion was grounded on a belief that the post-arrest statements of his co-defendant were prejudicial. The Government responded by stating that it did not intend to use any such statements in trial. On that showing the motion was denied. No post-arrest statements were offered in evidence. In this connection, the record does not support the appellant's argument that he made an oral motion to sever on the second day of the trial. Even if such a motion were made, its denial was not plain error affecting substantial rights which we should notice under Rule 52(b), F.R. Crim.P.

■ Appellant's challenge to the constitutionality of 26 U.S.C. § 4705(a) has been resolved against him by Minor v. United States, 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969). His other arguments on the invalidity of that section are, likewise, answered by *Minor*.

The Court's instructions are not before us. We assume the trial court followed the mandate of Erwing v. United States, 323 F.2d 674 (9th Cir.1963), and did not give the presumption instruction. The presumption feature of § 174 was recently declared constitutionally infirm in its application to cocaine. Turner v. United States, 396 U.S. 398, 90 S. Ct. 642, 24 L.Ed.2d 610 (1970).

■ Finally, we feel that appellant had more than a fair trial. The trial judge unnecessarily limited to the co-defendant the probative effect of the latter's statements. These statements might well have been submitted to the jury on the common plan or purpose which is evident in this record.

For the stated reasons, we conclude that the judgment of the lower court must be affirmed. It is so ordered.