(Nos. 40145, 41083 cons.—
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JOHN
DAVIS, Appellant.

*Opinion filed November 17, 1970.*

WARD, J., took no part.

RONALD ALWIN and ABRAM HOLTZBLATT, both of Chicago, appointed by the court, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE, and GEORGE ELSERNER, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

John Davis was jointly tried with two co-defendants in the circuit court of Cook County, and convicted of the sale and dispensing of narcotics. Davis and co-defendant Pearlie Hines were tried by a jury; James Smith was tried by the court in the same proceeding. The conviction of Hines was affirmed by this court on appeal. (*People* v. *Hines*, 30 Ill.2d 152.) Davis now appeals directly to this court from his con-

viction, alleging constitutional errors (see our Rule 603, 43 Ill.2d R. 603); the direct appeal has been consolidated with Davis's appeal from a judgment of the circuit court of Cook County dismissing, without an evidentiary hearing, his petition for relief under the Post-Conviction Hearing Act. (Ill. Rev. Stat. 1965 ch. 38 pars. 122—1 *et seq.*). In both appeals defendant alleges that the prosecutor's argument to the jury was improper, and denied him the right to a fair trial; in addition, defendant argues in the direct appeal from the conviction that he was prejudiced by the admission in evidence of a police informer's conversation with co-defendant Hines, which defendant contends was hearsay as to him and violated his sixth amendment right to confront and cross-examine witnesses.

The evidence at the trial consisted mainly of the testimony of Earl Shelby, a known narcotic addict, who had participated in a "controlled sale" at the request of police officers Bingham, Kearns and Dura. Shelby stated that he had been searched by the officers, and found to have no narcotics. He was then given ten dollars in marked money, a five-dollar bill and five one-dollar bills, left the officers in their car at the corner of 32nd Street and Indiana Avenue and walked one block east. He there met Pearlie Hines, and informed him that he wanted to purchase narcotics. Hines said he did not then have access to the narcotics but was waiting for "Twin" [Davis], who had the key to the apartment. James Smith then approached, and said "Twin" was in the area, and Davis joined the group shortly thereafter. The foursome went to a nearby apartment where Davis handed a key to Hines, who opened the door. Some white powder, later proved to be narcotics, was on a table inside, and Davis told Hines to give Shelby what he wanted. Shelby and Hines then sampled the narcotics to test its quality, after Hines inquired of Davis whether this supply was better than the last supply had been. Shelby gave the marked money to Hines in exchange for two tinfoil packets of the

narcotics, and left. Shelby then returned to the police car, where a field test of the white powder revealed that it was a narcotic. The officers returned with Shelby to the apartment, and arrested Davis and Smith as they were leaving. The group then entered the apartment, where Davis put his coat and nine dollars of the marked money on the table. Shelby's testimony was corroborated by officers Bingham and Kearns. None of the defendants testified.

Defendant contends that admission in evidence of co-defendant Hines's conversation with Shelby prior to defendant's arrival at the scene was a violation of his constitutional right to confront the witness against him. This contention is based upon an interpretation of the United States Supreme Court's decision in *Bruton* v. *United States,* 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620. The *Bruton* decision, held to be retroactive and applicable to the States in *Roberts* v. *Russell,* 392 U.S. 293, 20 L. Ed. 2d 1100, 88 S. Ct. 1921, reh. den. 393 U.S. 899, dealt with the admission in evidence at a joint trial of a co-defendant's post-arrest confession, wherein defendant Bruton was incriminated. The court held that the co-defendant's confession was hearsay as to Bruton, and its admission was a violation of Bruton's sixth amendment rights. The impact of this decision was clearly limited to hearsay statements: "We emphasize that the hearsay statement inculpating petitioner was clearly inadmissible against him under traditional rules of evidence * * *. There is not before us, therefore, any recognized exception to the hearsay rule insofar as petitioner is concerned and we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause." *Bruton* v. *United States,* 391 U.S. 123, 128, 20 L. Ed. 2d 476, 480, 88 S. Ct. 1620, 1623-24, fn. 3.

The statement to which Davis directs his argument is Hines's reply to Shelby's request for narcotics. As repeated by Shelby, "He said he didn't have anything right now, he couldn't get to it. He was waiting on the Twin to come be-

cause he had the key to the room or the apartment." "Twin" was later identified as Davis. If this statement of Hines was incriminating as to Davis, it was so only insofar as it reflected a continuing joint endeavor of Hines and Davis to sell narcotics. The statement was thus made in furtherance of a conspiracy, in an effort to temporarily placate a prospective customer. Such statements are the subject of a "recognized exception to the hearsay rule." As explained by the United States Supreme Court in *Lutwak* v. *United States,* 344 U.S. 604, 617, 97 L. Ed. 593, 603, 73 S. Ct. 481, 489: "Declarations of one conspirator may be used against the other conspirator not present on the theory that the declarant is the agent of the other, and the admissions of one are admissible against both under a standard exception to the hearsay rule applicable to the statements of a party. Clune v. United States, 159 U.S. 590, 593, 16 S. Ct. 125, 126, 40 L. Ed. 269. See United States v. Gooding, 12 Wheat. 460, 468-470, 6 L. Ed. 693. But such declaration can be used against the co-conspirator only when made in furtherance of the conspiracy. Fiswick v. United States, 329 U.S. 211, 217, 67 S. Ct. 224, 227, 91 L. Ed. 196; Logan v. United States, 144 U.S. 263, 308-309, 12 S. Ct. 617, 631-632, 36 L. Ed. 429." (Accord, *People* v. *Parson,* 27 Ill.2d 263, 267; *People* v. *Grilec,* 2 Ill.2d 538; *Spies* v. *People,* 122 Ill. 1; *Samples* v. *People,* 121 Ill. 547.) In the case of admission of a co-conspirator's statement made in the furtherance of the conspiracy, the hearsay rule is satisfied since defendant does have the opportunity to confront and cross-examine the witness who alleges that the statement was made. (See *People* v. *Carpenter,* 28 Ill.2d 116, 120-22.) The statement to which Davis takes exception was admissible against him as an exception to the hearsay rule, and was thus neither within the literal prohibition of *Bruton* nor within its rationale. (*McGregor* v. *United States* (5th cir., 1970), 422 F.2d 925; *Kay* v. *United States* (9th cir., 1970), 421 F.2d 1007; *Reyes* v. *United States* (9th cir., 1969), 417

F.2d 916; *Campbell* v. *United States* (6th cir., 1969), 415 F.2d 356; *Parness* v. *United States* (3d cir., 1969), 415 F.2d 346; *contra, United States* v. *Guajardo-Melendez* (7th cir., 1968), 401 F.2d 35. The absence of a conspiracy charge does not affect the admissibility of such testimony. *People* v. *Parson,* 27 Ill.2d 263; *Kay* v. *United States,* 421 F.2d 1007, 1010.

Defendant argues further that, even if *Bruton* does not necessarily control where a co-conspirator's statement is admitted against a defendant under the exception to the hearsay rule, that interpretation of *Bruton* is irrelevant under the circumstances in this case. The trial court here sustained Davis's objection to the testimony, and instructed the jury not to consider it against Davis. Therefore, it is argued, the issue is simply whether the jury could perform that task. The essence of the decision in *Bruton* was that such selective consideration of evidence is beyond the jury's capability. We cannot accept defendant's argument. As we have seen, the testimony need not have been ruled inadmissible against Davis; therefore, defendant's contention stands merely as a complaint that he may not have received the full benefit of an error in his favor. There can be no claim of prejudice in such circumstances; in this respect, defendant "had more than a fair trial." *Kay* v. *United States* (9th cir., 1970), 421 F.2d 1007, 1011.

Without regard to our determination that *Bruton* is inapplicable here, we could not view the challenged statement as prejudicial in any event. (*Cf. Harrington* v. *California,* 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726.) The defendant contends that the allegedly hearsay repetition of the statement that he had the apartment door key was damaging, insofar as it might have been received by the jury as evidence of that fact. The prejudice is claimed to inhere in the fact that Davis was not able to cross-examine Hines, who made the statement. We regard the prejudicial impact of that circumstance to be minimal, since Shelby subse-

quently testified directly to the very fact that Davis had the door key, saying, "And then Twin gives Pearlie a key. Pearlie opened the door." Defendant's opportunity to cross-examine as to the truth of the fact was therefore unquestionably preserved in respect to this far more direct evidence that he had the key.

Defendant has also argued that he was denied a fair trial by virtue of the prosecutor's inflammatory argument to the jury, in the course of which he appealed to the particular personal circumstances, sympathies, and prejudices of several jurors, whom he addressed individually by name. We need not relate in detail the prosecutor's comments; it will suffice to say that the tactic of addressing jurors individually, by name, and attempting to play upon their personal circumstances and fears is disapproved by this court. Such tactics produce for the State no benefit whatever, since a conviction will not stand where it appears that the jury's verdict may have been influenced by improper argument. (*People* v. *Naujokas,* 25 Ill.2d 32; *People* v. *Stephens,* 6 Ill.2d 257.) While we affirm the conviction in this case, we do so only upon finding that the verdict could not have been otherwise had the improper remarks not been made. In this conclusion, we are in accord with our earlier appraisal of the effects of the prosecutor's remarks upon the conviction of Davis's co-defendant, Pearlie Hines. See *People* v. *Hines,* 30 Ill.2d 152, 157-58.

We accordingly affirm the conviction on direct appeal, and affirm the judgment of the circuit court of Cook County in dismissing the petition for relief under the Post-Conviction Hearing Act.

*Judgments affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.