THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MAURICE R. REDEAUX, Defendant-Appellant.

Second District   No. 2—03—0772

Opinion filed February 4, 2005.

G. Joseph Weller and Darren E. Miller, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Following a jury trial, defendant, Maurice R. Redeaux, was convicted of unlawful delivery of a controlled substance (720 ILCS 570/401(a)(2)(C) (West 2002)). Defendant appeals, contending that he was denied his right to confront the witnesses against him when the trial court allowed the State to introduce tape-recorded conversations between Robert Johns and an undercover officer that referred to defendant. He also contends that he is entitled to $360 credit toward his fine. We affirm as modified.

At trial, Rafael Osorio testified that he was an agent with the Du Page Metropolitan Enforcement Group (DUMEG). In late July 2002, he was working undercover trying to arrange to purchase a kilogram of cocaine from Robert Johns. In a series of telephone conversations beginning on July 31, 2002, Johns and Osorio discussed the purchase. Johns originally offered a kilogram of cocaine for $23,500. Osorio made a counteroffer of $21,000. Johns said he would have to check with his source. Johns called back later and offered to sell the cocaine for $22,500. Osorio countered with an offer of $22,000. Johns again talked to his source, who rejected the counteroffer. However, Johns and Osorio continued to discuss meeting the next day to complete the purchase.

Later conversations that occurred on July 31 were played for the jury. During one such conversation, Johns said that the cocaine was "somebody else's shit" and that his source did not want to complete such a large transaction unless the source was present. Later, Johns

said that the source wanted to do the transaction in the "city" because the cocaine could not be fronted to the source. Osorio refused to do the deal in the city. Osorio said that the source could sit in Johns' car while Johns conducted the transaction.

Osorio thought the transaction would occur on August 1, 2002, but it did not. On August 2, Osorio and Johns conversed several times. They agreed to reduce the amount of cocaine to a half kilogram. Osorio told Johns that he wanted to purchase the other half kilogram the following day. They arranged to meet in a Home Depot parking lot.

At about 8:13 p.m. on August 2, Osorio was in the Home Depot parking lot when he saw a black Ford Expedition and a black and gray Suburban (which he recognized as Johns' car) pull in. Johns was driving the Expedition. He had one passenger, whom Osorio identified at trial as defendant. Osorio saw Johns get out of the Expedition and stand at the driver's-side window. Defendant reached toward the driver's-side floorboard and handed a black bag to Johns. Johns reached inside the car to take the black bag. He then got into the passenger's side of Osorio's car and gave the bag to Osorio. Defendant and Johns were immediately arrested. The black bag contained four individually wrapped packages, which contained cocaine weighing 492.05 grams.

Defendant testified that on August 2, Johns asked him to help pick up some items for his girlfriend's father. Johns said he was going to get some drywall and doorknobs. Defendant reluctantly agreed to help. Defendant had not previously known Johns to be a drug dealer and would not have gone with him if he had known that Johns intended to engage in a drug transaction.

The jury found defendant guilty. After denying his posttrial motion, the trial court sentenced him to 15 years in prison and imposed a $13,000 street-value fine. Defendant timely appealed.

■ Defendant first contends that the trial court erred by allowing the State to introduce the tape-recorded conversations between Johns and Osorio. Defendant argues that these conversations consisted of testimonial hearsay, which should not have been admitted. Defendant contends that *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), makes such evidence inadmissible unless the declarant testifies at trial or was previously subject to cross-examination, neither of which happened here. The standard of review for deciding whether an individual's constitutional rights have been violated is *de novo*. *People v. Burns*, 209 Ill. 2d 551, 560 (2004).

The sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to confront the witnesses against him." U.S. Const., amend. VI. In *Crawford*, the Supreme Court

held that the confrontation clause requires that a defendant have an opportunity to cross-examine the prosecution witnesses. Accordingly, "testimonial" hearsay is inadmissible unless the declarant is shown to be unavailable and the accused had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374.

The Court did not define "testimonial." After considering several possible definitions, the Court found that to decide the case at hand, it was sufficient to note that the term applied, "at a minimum, *** to police interrogations." *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374. The Court also did not define "interrogation." The Court observed, "Just as various definitions of 'testimonial' exist, one can imagine various definitions of 'interrogation.' " Again, the Court declined to "select among them," holding that the statement at issue, which was "knowingly given in response to structured police questioning, qualifies under any conceivable definition." *Crawford*, 541 U.S. at 53 n.4, 158 L. Ed. 2d at 194 n.4, 124 S. Ct. at 1365 n.4.

The Court made clear, however, that the requirement of cross-examination applied only to "testimonial" hearsay and was not intended to abrogate " 'firmly rooted exception[s] to the hearsay rule.' " *Crawford*, 541 U.S. at 56, 158 L. Ed. 2d at 196, 124 S. Ct. at 1367, quoting *Lilly v. Virginia*, 527 U.S. 116, 134, 144 L. Ed. 2d 117, 133, 119 S. Ct. 1887, 1899 (1999). One such exception is "statements in furtherance of a conspiracy." *Crawford*, 541 U.S. at 56, 158 L. Ed. 2d at 196, 124 S. Ct. at 1367; *People v. Goodman*, 81 Ill. 2d 278, 283 (1980).

■ Defendant acknowledges the coconspirator exception but argues that it should not apply here for two reasons. First, he contends that Johns' statements are not admissible because they were not "statements between co-conspirators." We can easily dispose of this contention because the coconspirator exception contains no such requirement. Rule 801 of the Federal Rules of Evidence, which defines coconspirator statements as "not hearsay," requires only that the statements be "by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Federal courts applying the exception have "universally" held that the fact that one party to a conversation is a government agent does not preclude the admission of a statement as long as the declarant is a member of the conspiracy. *United States v. Mahkimetas*, 991 F.2d 379, 383 (7th Cir. 1993).

Similarly, Illinois courts have permitted police officers to testify to coconspirators' statements made to them. In *Goodman*, an undercover officer testified about his conversation with a codefendant. *Goodman*,

81 Ill. 2d at 281-82. The court held that a conspiracy existed. *Goodman*, 81 Ill. 2d at 283. In *People v. Columbo*, 118 Ill. App. 3d 882 (1983), the court rejected the defendant's argument that no conspiracy existed because the informants with whom she discussed her plan to kill her family never had any intention of carrying out the crime. The court cited *Goodman* and other cases for the proposition that the fact that one party to the conversation is a government agent does not eliminate the conspiracy. *Columbo*, 118 Ill. App. 3d at 946-47; see also *People v. Swerdlow*, 269 Ill. App. 3d 1097, 1100 (1995) (coconspirator's statements to undercover agent properly admitted); M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 802.10, at 680 (8th ed. 2004).

For purposes of this appeal, defendant does not dispute that Johns was his coconspirator. Thus, the statements fall within the exception and it does not matter that the statements were made to an undercover officer rather than to a fellow conspirator.

Defendant next contends that Johns' statements are inadmissible under *Crawford* because Osorio "interrogated" Johns. As noted, *Crawford* did not define "interrogation." However, the Court held that the statement under consideration was testimonial because it was given in response to "structured police questioning." *Crawford*, 541 U.S. at 53 n.4, 158 L. Ed. 2d at 194 n.4, 124 S. Ct. at 1365 n.4. Indeed, the common definition of "interrogate" is "to question formally and systematically." Merriam-Webster's Collegiate Dictionary 611 (10th ed. 2001).

Here, nothing in the conversations between Osorio and Johns even came close to "structured police questioning." The two were merely trying to arrange the details of a drug transaction. Although Osorio asked questions during the conversations, they were merely to facilitate the sale of the cocaine. Osorio did not press Johns for information beyond what was necessary for that purpose. Notably, although Johns repeatedly referred to his "source," Osorio did not question him about the source's identity. Johns' statements were more like casual conversation and not in response to "interrogation."

Defendant is correct that "interrogation" in some contexts encompasses more than just the formal questioning of an in-custody suspect by a police officer. Indeed, the suspect need not even know that he is being interrogated. See *Massiah v. United States*, 377 U.S. 201, 206, 12 L. Ed. 2d 246, 250, 84 S. Ct. 1199, 1203 (1964). *Massiah* and its progeny involved surreptitious attempts to obtain incriminating statements from the suspects themselves. Moreover, it was clear in *Massiah* that the government was trying to get the defendant to incriminate himself. Here, there is simply no indication that Osorio's conversations with Johns were a subterfuge to gain information about this or some other crime.

In *In re Rolandis G.*, 352 Ill. App. 3d 776 (2004), this court held that *Crawford* barred the use of statements that a child sexual abuse victim made to a police officer and a child-abuse investigator. We noted that the victim's statements were "the result of formal and systematic questioning" by trained investigators. *Rolandis G.*, 352 Ill. App. 3d at 781. While "interrogation" need not be limited to the type of formal questioning at issue there, the casual conversations recorded here have none of the characteristics of formal, structured questioning.

Two commentators have suggested that coconspirator statements are by definition not testimonial. "By its very nature, a co-conspirator's out of court statement is not 'testimonial.' It has one purpose: to advance the conspiracy, not to defeat it." R. Ruebner and T. Scahill, *Crawford v. Washington, the Confrontation Clause and Hearsay: A New Paradigm for Illinois Evidence Law*, 36 Loy. U. Chi. L.J. (forthcoming Spring 2005). Here, Johns was attempting to advance the conspiracy by negotiating to sell the drugs. His comments can in no way be considered testimonial.

The cases defendant cites, where lower courts have applied *Crawford*, either are factually dissimilar or actually support the admission of the evidence. Both *United States v. Reyes*, 362 F.3d 536, 540 n.4 (8th Cir. 2004), and *Diaz v. Herbert*, 317 F. Supp. 2d 462, 482 n.11 (S.D.N.Y. 2004), rejected claims that coconspirators' statements should have been barred by *Crawford*, finding that the statements were nontestimonial. In *Reyes*, as here, the coconspirator's statements were made to an undercover agent. *Reyes*, 362 F.3d at 540. Defendant argues that *Reyes'* analysis is flawed because it did not discuss whether the statements were obtained through "interrogation." Because the court specifically found that the statements were nontestimonial, the court must have implicitly concluded that they were not the result of an interrogation. In any event, we have already decided that the statements at issue here were not obtained through interrogation.

The only case defendant cites in which coconspirator statements were excluded under *Crawford* is *United States v. Hendricks*, No. CRIM 2004—05 F/R (D.V.I. 2004). The court's brief opinion does not reveal much about the content of the conversations it excluded. Therefore, it is impossible to discern on what basis the court found that the statements were testimonial.

■ Defendant also contends that he is entitled to $360 credit toward his fines because he spent 72 days in jail before trial. The State confesses error. Section 110—14 of the Code of Criminal Procedure of 1963 provides that a defendant shall receive a $5 credit against any fine imposed for each day he spent in pretrial custody. 725 ILCS 5/110—14 (West 2002). The sentencing order grants defendant

72 days' credit toward his prison sentence but does not apply any credit toward his fine. The parties do not dispute that defendant was jailed for 72 days before trial. Therefore, we modify the judgment to reflect a $360 credit against defendant's fine.

The judgment of the circuit court of Du Page County is affirmed as modified.

Affirmed as modified.

McLAREN and CALLUM, JJ., concur.