Filed 4/29/10                    NO. 4-09-0318

                      IN THE APPELLATE COURT

                           OF ILLINOIS

                          FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,   )   Appeal from
          Plaintiff-Appellant,         )   Circuit Court of
          v.                           )   Macon County
CHARLES E. COLEMAN,                    )   No. 08CF1291
          Defendant-Appellee.          )
                                       )   Honorable
                                       )   Timothy J. Steadman,
                                       )   Judge Presiding.
_____

          PRESIDING JUSTICE MYERSCOUGH delivered the opinion of

the court:

          The State appeals the trial court's April 2009 ruling

that certain statements of an alleged coconspirator of defendant,

Charles E. Coleman, were inadmissible hearsay.  We reverse and

remand for further proceedings.

                          I. BACKGROUND

          On September 9, 2008, the State charged defendant with

unlawful possession of cannabis with intent to deliver (720 ILCS

550/5(c) (West 2006)), unlawful possession of cannabis with an

unlawful-possession-of-cannabis conviction (720 ILCS 550/4(c)

(West 2006)), and two counts of unlawful possession of a con-

trolled substance with intent to deliver with a prior unlawful-

possession-of-a-controlled-substance-with-intent-to- deliver

conviction (720 ILCS 570/401(a)(2)(B) (West 2006)).  On April 28,

2009, the State filed a motion to admit the coconspirator state-

ments of codefendant Kwain Ewing.  That same day, the trial court held a hearing on the State's motion.

At the hearing, the State indicated the evidence would show that Tristen Green was operating as a confidential informant with the Decatur police department and working with Detective Shannon Seal.  Seal applied for and received a court-authorized overhear.  On September 2, 2008, Green was outfitted with the overhear device and met with codefendant Ewing.  Ewing and Green had conversations about buying 4.5 ounces of cocaine for $1,200 per ounce, or $5,400 total.  Ewing indicated he needed to go to Chicago to meet with the "old heads" who had "anything you want" including cocaine, heroin, pills, and cannabis.  Ewing agreed to contact Green when he got back to town.  The next day, Ewing contacted Green and arranged to exchange $5,400 for 4.5 ounces of cocaine.  Seal and other officers conducted surveillance. Originally, the meeting was to occur at a gas station on North Woodford.  The officers saw a Jaguar with two black males inside pull up to the gas station on North Woodford.  However, during phone calls, the location of the cash-for-drug exchange was changed to a Cub Foods grocery store.  The officers saw the Jaguar, in which defendant was identified as the driver and Ewing was identified as the passenger, go to the Cub Foods parking lot. Both defendant and Ewing got out of the car and proceeded to the front of the store.  When Green arrived at Cub Foods, Ewing

- 2 -

started to walk from the front of the store to his vehicle. The police intercepted him before he could get in the car. After Ewing was arrested, the police found about 150 grams of cocaine and some cannabis. The police also arrested defendant because he was the person who drove Ewing to the parking lot.

When interviewed by the police, defendant stated he had come down from Chicago because it was a day off work. He met Ewing at a house on Macon Street. Ewing needed a ride to the grocery store so defendant gave him one. The officers confirmed with defendant that he had not stopped anywhere else. They then confronted him with the fact that they had evidence that he and Ewing stopped at a Circle K in Forsyth on Koester Drive.

Defendant gave the police consent to search his hotel room. The police found a piece of paper with $5,400, the amount of the transaction that was set up between Ewing and Green, on it. Defense counsel noted the math on the paper did not add up to $5,400.

The State indicated it was seeking to admit the recorded conversation between Green and Ewing through Detective Seal. The conversation was recorded with a digital recorder and Seal could testify and lay the foundation for its admission.

The trial court stated the following in announcing its ruling:

"All right. Well, first of all, I think

it is a good idea to resolve this beforehand. It's definitely a good idea. As far as the co[]conspirator's statements are concerned, they're an exception to the hearsay rule as counsel knows. I think the attorneys have accurately stated the law regarding determining whether or not an alleged purported co[]conspirator's statement can be admitted against a particular defendant in a trial. The--I'm going to focus on the context of the statements that we're specifically dealing with in this motion which would have been, as I understand it, the statements of September 2nd when the confidential source met with the co[]defendant. Apparently, Mr. Ewing is his name. And, as I understand it, from reading the motion and hearing the arguments of counsel, what was stated, among other things by the co[]defendant was, after the agreement was made, that he would be talking to, going to Chicago, making arrangements with, as Ms. Wagoner mention, 'the old heads.' So at that point in time we had statements of the co[]defendant suggesting that, in fact, there

- 4 -

were other people involved in making the arrangements so this transaction could be completed.  Now, as I understand the law--and Ms. Wagoner is correct, circumstantial evidence may be considered to determine whether or not there's sufficient independent evidence for purposes of admitting a co[]conspirator's statement.  At that point in time, and it's not surprising that the name of this defendant wasn't mentioned, just these [']old heads['] in Chicago that were going to apparently or supply the, I guess it was cocaine, whatever the contraband was.  Now, as I understand it, reviewing the law, the statement must be made during the course and in furtherance of the conspiracy.  At that point in time, on September 2nd[,] we have circumstantial evidence that the co[]defendant may be referring to this defendant because apparently there's further evidence that this defendant came down from Chicago.  Okay.  We do have that.  There are a lot of people in Chicago.  So I don't know how much that narrows us down to whether or

not at that point in time there was certain independent, or sufficient evidence not to establish a conspiracy, which there was, but to establish whether or not this defendant was involved in the conspiracy at that point in time. And, you know, if you think outside the box, it's possible that when the statements were made by Mr. Ewing on September 2nd, unlikely, but possible, that he didn't know who the supplier would be or that there were a number of potential suppliers or [']old heads[]' in Chicago who could deliver the goods, so to speak, so he could consummate this transaction apparently the next day. At that point in time, however, September 2nd, I don't think there's sufficient evidence at that point, independent evidence to suggest that this defendant may have been involved in this alleged conspiracy. All that other evidence I heard about with regard to this defendant driving Mr. Ewing down the next day in the vehicle and going from different locations before Mr. Ewing exited the car and apparently was arrested by police, I don't

give those a whole lot of weight because I think, as I read the law, and again, counsel may disagree, and I respect that, the [c]ourt has to focus on the point in time at which the statements sought to be introduced have been made.  And I just think based on what I've heard today, based on reviewing the reports--or the motion as what I understand the evidence would be, there isn't a sufficient independent basis.  So I will deny the motion, and that's not saying that if we go to trial on other counts that some of this evidence is about, you know, who drove the person with the drugs down here, what was in the hotel room, those are separate issues as far as I'm concerned.  I'm focusing only on the statements made by Mr. Ewing on September 2nd."

Also on April 28, 2009, the State filed a certification of impairment in which it stated the denial of the State's motion to admit coconspirator's statements substantially impaired the State's ability to prosecute the matter and its notice of appeal.

## II. ANALYSIS

On appeal, the State contends the trial court erred by

- 7 -

denying the State's motion to admit the hearsay evidence under the coconspirator exception to the hearsay rule. Supreme Court Rule 604(a)(1) allows the State to bring an interlocutory appeal from a pretrial evidentiary ruling that has the substantive effect of suppressing evidence. 210 Ill. 2d R. 604(a)(1). "[T]here is no substantive distinction between evidence that is 'excluded' and evidence that is 'suppressed.'" People v. Drum, 194 Ill. 2d 485, 491, 743 N.E.2d 44, 47 (2000). Because there is no substantive difference between excluding evidence, and suppressing it, we apply the standard of review used in reviewing a court's ruling on a motion to suppress. Review of a trial court's ruling on a motion to suppress presents a mixed question of fact and law. People v. Pitman, 211 Ill. 2d 502, 512, 813 N.E.2d 93, 100 (2004). The correctness of a trial court's ruling on a motion to suppress presents a legal question, which this court reviews de novo. People v. Moss, 217 Ill. 2d 511, 518, 842 N.E.2d 699, 704 (2005). However, this court will not overturn the trial court's findings of historical fact unless they are against the manifest weight of the evidence. Pitman, 211 Ill. 2d at 512, 813 N.E.2d at 100.

The coconspirator exception to the hearsay rule provides that, "any act or declaration (1) by a coconspirator of a party, (2) committed in furtherance of the conspiracy, and (3) during its pendency is admissible against each and every

- 8 -

coconspirator, provided that (4) a foundation for its reception is laid by independent proof of the conspiracy." People v. Childrous, 196 Ill. App. 3d 38, 51, 552 N.E.2d 1252, 1261 (1990). "The coconspirator hearsay exception does not extend to a statement which is merely a narrative of past occurrences and which does not further any objective of the conspiracy." People v. Kliner, 185 Ill. 2d 81, 141, 705 N.E.2d 850, 881 (1998).

"This court has held that the State must make an independent, prima facie evidentiary showing of the existence of a conspiracy between the declarant and the defendant." People v. Ervin, 226 Ill. App. 3d 833, 842, 589 N.E.2d 957, 964 (1992). Evidence of the conspiracy may be totally circumstantial; however, it must be sufficient, substantial, and independent of the declarations made by the coconspirator in order for the hearsay statements to be admitted under this exception. Ervin, 226 Ill. App. 3d at 842, 589 N.E.2d at 964. Moreover, it is not necessary that a conspiracy be charged for the statement-by-a-coconspirator exception to apply. People v. Meagher, 70 Ill. App. 3d 597, 601, 388 N.E.2d 801, 803 (1979).

Initially, we note the trial court indicated it ruled the way it did because at the point in time the statement the State sought to introduce was made, the court did not "think there's sufficient evidence at that point, independent evidence to suggest this defendant may have been involved in this alleged

conspiracy." The court thought it had "to focus on the point in time at which the statements sought to be introduced have been made." Therefore, the court did not give much weight to the paper found in defendant's hotel room and the fact defendant drove Ewing back from Chicago the next day and went to several different locations with Ewing and then was arrested with him. This court is not aware of any requirement that the nonhearsay evidence that shows the existence of a conspiracy must have existed at the time the coconspirator's statement sought to be admitted was made. In People v. Davis, 46 Ill. 2d 554, 556-58, 264 N.E.2d 140, 141-42 (1970), our supreme court rejected the defendant's argument that evidence of a codefendant's conversation with another party regarding a potential purchase of narcotics from the defendant was erroneously allowed into evidence because that conversation took place prior to the defendant's arrival at the scene. The defendant had joined the group after the conversation at issue took place and then participated in the narcotics transaction. Davis, 46 Ill. 2d at 556, 264 N.E.2d at 141. That court's discussion of the facts shows the court took into consideration what happened after the codefendant's conversation that was at issue took place. See Davis, 46 Ill. 2d at 556-57, 264 N.E.2d at 141-42.

Defendant cites People v. Duckworth, 180 Ill. App. 3d 792, 795, 536 N.E.2d 469, 472 (1989), for the proposition that,

"the mere appearance of defendant at the scene of the drug transaction does not establish any illicit association between him and [the alleged coconspirator]."  In Duckworth, Tammy Duckworth made statements to an undercover agent that her uncle would be the source of the drugs the agent agreed to buy from Tammy.  Duckworth, 180 Ill. App. 3d at 793, 536 N.E.2d at 470.  The agent also told Tammy to have her uncle come to the parking lot and park a few rows away.  Duckworth, 180 Ill. App. 3d at 795, 536 N.E.2d at 471.  Later, a van with a male driver, the defendant, pulled into the parking lot where the exchange was to take place and parked a short distance away from the agent's vehicle.  Duckworth, 180 Ill. App. 3d at 795, 536 N.E.2d at 471.  The State argued this was sufficient, independent evidence of a conspiracy between Tammy and the defendant.  Duckworth, 180 Ill. App. 3d at 795, 536 N.E.2d at 471-72.  The court held there was insufficient evidence of a conspiracy between Tammy and the defendant.  Duckworth, 180 Ill. App. 3d at 795, 536 N.E.2d at 471.  The court noted that (1) the defendant's mere presence at the scene of the drug transaction did not establish an illicit association between Tammy and the defendant and (2) Tammy's act in returning with defendant created the inference that he was her uncle and source but was a verbal act which also constituted impermissible hearsay.  Duckworth, 180 Ill. App. 3d at 795, 536 N.E.2d at 472.  The court then stated that "[n]one of the

nonhearsay evidence establishes an agreement between the two defendants, which is a necessary element of a simple conspiracy." Duckworth, 180 Ill. App. 3d at 795, 536 N.E.2d at 472.

However, there was more evidence of a conspiracy in the case sub judice. Here, Ewing told Green he would have to talk to the "old heads" in Chicago but would contact Green when Ewing arrived back from Chicago. The agreed-upon price was $5,400 for 4.5 ounces of cocaine. Ewing contacted Green the next day to set up the drug exchange. Defendant was with Ewing when they were arrested in the Cub Foods parking lot. Defendant is from Chicago. Moreover, defendant gave police consent to search his hotel room, where the police found a piece of paper with $5,400 written on it, the exact agreed-upon price for the 4.5 ounces of cocaine. Finally, defendant lied to the police about how long he had been with Ewing and where they had stopped that day. This constitutes more than just mere presence at the drug transaction. While circumstantial, these facts, taken together and considered independent of the coconspirator's hearsay statement, constitute sufficient evidence of a conspiracy between defendant and Ewing to sell these drugs. Therefore, the State's motion to admit coconspirator's statements should have been granted.

In his brief, defendant states that Green could not be considered part of a common plan to accomplish a criminal goal because he was a confidential informant and was not actually

agreeing to a drug transaction.  This fact is irrelevant to the analysis as Illinois courts have held that the fact one party to a conversation is a police officer or government agent does not eliminate a conspiracy.  People v. Redeaux, 355 Ill. App. 3d 302, 305-06, 823 N.E.2d 268, 271 (2005), citing People v. Goodman, 81 Ill. 2d 278, 281-82, 408 N.E.2d 215, 215-16 (1980), and People v. Columbo, 118 Ill. App. 3d 882, 946, 455 N.E.2d 733, 780 (1983) (where court cited Goodman for the proposition that the fact one party to the conversation was a government agent did not elimi- nate the conspiracy).

### III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

Reversed and remanded.

STEIGMANN and APPLETON, JJ., concur.