THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHARLES R. DUCKWORTH, Defendant-Appellant.

Fourth District   No. 4—88—0704

Opinion filed March 23, 1989.—Rehearing denied April 24, 1989.

Glenn H. Collier, of Jackson, Mitchell & Collier, of Peoria, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and James Overholt, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

Defendant Charles R. Duckworth was tried jointly with codefendant Tammy Duckworth on charges that they knowingly delivered a controlled substance in violation of section 401(a)(2) of the Illinois Controlled Substances Act (Act). (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2).) On April 29, 1988, the circuit court of Vermilion County entered judgment on jury verdicts finding both guilty of that offense. Defendant now appeals, contending (1) the court erred in admitting certain hearsay statements allegedly made by the codefendant and (2) the State failed to prove him guilty of the offense beyond a reasonable doubt. We reverse.

The testimony presented during the trial in this cause shows the following sequence of events, which was not contradicted. In July 1987, special agent Richard Scott of the Quad City Metropolitan Enforcement Group learned about a potential drug contact by the name of Tammy Duckworth through a confidential source. On July 8, 1987, Scott made two telephone calls to a woman in Danville. He later learned the voice of the woman he talked with on that date belonged to Tammy Duckworth.

Scott testified that, during the conversations with Tammy Duckworth, she agreed to sell him three ounces of cocaine every three to four weeks. He said she further informed him she would get the cocaine from an uncle who lived next door to her and the uncle told her each ounce of cocaine would cost $1,400. Scott and Tammy Duckworth arranged to meet on July 10, 1987, at the Village Mall in Danville to consummate the deal they had made.

On July 10, 1987, Scott arrived in Danville and proceeded to the arranged point with a Vermilion County surveillance team. He telephoned Tammy Duckworth, and she told him she would be driving a white Buick. He subsequently saw a vehicle fitting that description pull into the mall parking lot. He waved the driver over and asked her if her name was Tammy, to which she responded it was. Scott said that, when she entered his car, she told him "her uncle was going to be the source *** and that her uncle had to show his man the money" before Scott could get the cocaine.

Scott refused to turn the money over to her without receiving the

drugs but said he "suggested to her that she have her uncle drive to the Village Mall [and] park a couple rows away from [his] car." Scott said she could then go between his car and her uncle's car with the cocaine, and he would give her the money. Tammy Duckworth left briefly and returned a second time. She informed Scott she could not get three ounces but could only obtain an ounce and a half of cocaine. Scott agreed to purchase the lesser amount for $2,700, and Tammy Duckworth again left the mall parking lot. Scott said that, when Tammy Duckworth later returned to his vehicle, she gave him two bags of a powdery substance thereafter proved to be cocaine. Scott proceeded to count out the money and signaled the surveillance units that the deal had been made. Tammy Duckworth was then placed under arrest.

Robert Putnam, one of the surveillance officers positioned at the mall parking lot, witnessed the first two contacts between Tammy Duckworth and Agent Scott. He said he subsequently saw a blue van enter the parking lot and park nearby. Tammy Duckworth exited the passenger side of the van, walked past the surveillance vehicle and entered Scott's car. Putnam was then notified delivery had been made. Putnam and another surveillance officer approached the van and ordered the man sitting in the driver's side to exit the vehicle. The man, defendant Charles Duckworth, was then placed under arrest. Another female passenger of the van was also arrested. Another surveillance officer, Jack Smith, corroborated the testimony given by Putnam.

Ordinarily, we would first address a reasonable doubt question raised by an accused, for resolution of such an issue could well decide the outcome of a case. However, because we conclude error occurred here in admitting certain hearsay evidence, we need not address the sufficiency of proof. Clearly, absent such hearsay evidence, the evidence is insufficient to convict defendant of the offense of delivery of a controlled substance beyond a reasonable doubt.

During trial, when the prosecution attempted to elicit the details of the conversations had between Scott and Tammy Duckworth, defendant's attorney objected to such testimony on hearsay grounds. He stated he thought "the conversation that the agent [was] probably going to get into—he's going to make reference to Tammy Duckworth saying that her uncle was going to be her source. I think that that is clearly hearsay." The court overruled the objection and allowed Scott to testify concerning the content of the conversations.

Defendant argues on appeal that the introduction of certain testimony violated the hearsay rule and should not have come in. He spe-

cifically points to testimony by Scott that Tammy Duckworth told him her "uncle" would be her "source" and she would speak with her "uncle" about Scott's suggestion that he come to the mall lot with her to witness the transaction. He claims such evidence does not fall within the coconspirator exception to the hearsay rule because the State failed to prove the existence of a conspiracy through evidence independent of the hearsay statements. We agree.

Declarations of a coconspirator made in furtherance of and during the pendency of a conspiracy are admissible against all conspirators upon an independent, *prima facie* evidentiary showing of a conspiracy between the declarant and other defendants. (*People v. Goodman* (1980), 81 Ill. 2d 278, 408 N.E.2d 215.) While evidence of a conspiracy can be totally circumstantial, such evidence must be sufficient, substantial, and independent of the declarations made in order to admit statements by a declarant under the coconspirator exception to the hearsay rule. *People v. Deatherage* (1984), 122 Ill. App. 3d 620, 461 N.E.2d 631.

Here, the evidence exclusive of those hearsay statements allegedly made by Tammy Duckworth was insufficient to establish a conspiracy between Tammy and the defendant. The State argues the evidence that Scott told Tammy to have her uncle return with her and park a few rows away and that a van with a male driver subsequently pulled into the parking lot and parked a short distance away from Scott's vehicle constituted sufficient, independent evidence of the existence of a conspiracy between the two codefendants.

While we recognize the acts and declarations of conspirators themselves may form an inferential basis for the existence of a conspiracy (*People v. White* (1984), 122 Ill. App. 3d 24, 460 N.E.2d 802), the mere appearance of defendant at the scene of the drug transaction does not establish any illicit association between him and Tammy Duckworth. (*People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520.) Tammy Duckworth's act in returning with defendant creates the inference that he is her uncle and source but is a verbal act which also constitutes impermissible hearsay. None of the nonhearsay evidence establishes an agreement between the two defendants, which is a necessary element of a simple conspiracy. Ill. Rev. Stat. 1987, ch. 38, par. 8—2.

Since the State failed to prove the existence of a conspiracy between defendant and Tammy Duckworth, we conclude the trial court erred in allowing Scott to testify concerning those references to an "uncle" or "source" allegedly made by Tammy Duckworth during a conversation between her and Scott. We noted previously that, with-

out that evidence, the conviction against defendant cannot stand. Mere presence at the scene of a crime and knowledge that a crime is being committed are insufficient to establish guilt. *Evans*, 87 Ill. 2d 77, 429 N.E.2d 520.

For the reasons stated, the judgment of the circuit court of Vermilion County is reversed.

Reversed.

LUND and SPITZ, JJ., concur.