THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL KABAKOVICH, Defendant-Appellant.

Second District   No. 2—91—0638

Opinion filed June 18, 1993.

G. Joseph Weller, of State Appellate Defender's Office, and Josette Skelnik, of Law Offices of Josette Skelnik, both of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Robert J. Morrow, of Early, Collison, Tousey, Regan, Wlodek & Morrow, of Elgin (William L. Browers, Lisa Anne Hoffman, and John X. Breslin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE QUETSCH delivered the opinion of the court:

Defendant, Michael Kabakovich, appeals his conviction of the unlawful delivery of a controlled substance (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(b)(2) (now codified, as amended, at 720 ILCS 570/401(c)(2) (West 1992))). Defendant argues that the trial court improperly allowed into evidence the hearsay statements of an alleged coconspirator without sufficient proof that defendant and the declarant were engaged in a conspiracy.

Before a court may allow into evidence the hearsay statements of a coconspirator against a defendant, the State must present *prima facie* proof that the defendant and the hearsay declarant were in fact engaging in a conspiracy. (*People v. Deatherage* (1984), 122 Ill. App. 3d 620, 623.) The proof of the conspiracy must be established by independent, nonhearsay evidence prior to the admission of the hearsay statements. (122 Ill. App. 3d at 623.) Without proof of a joint venture, the hearsay statements are inadmissible in a trial of the defendant's guilt. (122 Ill. App. 3d at 624.) A defendant's mere knowledge of or acquiescence to an illegal act does not constitute a conspiracy. *People v. Darnell* (1990), 214 Ill. App. 3d 345, 362.

At the trial in the cause before the court, the State introduced evidence concerning four deliveries of cocaine, although defendant was charged with the offense for July 17, 1990, only. On June 7, 1990, Agent Larry Weiss of the Du Page Metropolitan Enforcement Group (DuMEG) met Thomas Stark at the Cloverdale Tap in Bloomingdale. They entered Weiss' undercover car and drove to a house on St. Charles Road near Wheaton. Weiss gave $450 to Stark, who went into the house for a few minutes and returned with a quarter ounce of cocaine wrapped in gauze. Outside the house was a white Mustang automobile registered to defendant with an address in Westmont. Weiss then drove back to the bar with Stark.

On June 13, 1990, Weiss was in the bar and saw defendant give Stark a birthday card. Later, Weiss gave Stark $440. Stark left the bar with defendant, and they were gone about 15 minutes. Outside, Agent William Simmons of DuMEG saw defendant and Stark get into the Mustang. Simmons followed the car, which defendant drove to the Wheaton house. Defendant and Stark were in the house only for a couple minutes, and then defendant drove Stark back to the bar. Stark entered the bar and came outside with Weiss. Stark went into Weiss' car, and Stark handed Weiss four bags of cocaine.

On June 28, 1990, Weiss met Stark at the bar at 8:08 p.m. At 10:26 p.m. Weiss returned to the bar and saw defendant, who was alone. Weiss went outside, saw Stark, and gave him $450. Stark started to go inside when defendant walked out the door. Defendant and Stark talked inside the white Mustang. Stark walked back inside the bar, and Weiss gave him an additional $350. Stark returned to defendant and talked by the white Mustang for a couple minutes. Stark came back, and Stark and Weiss walked outside to Weiss' car. During a short drive, Stark gave Weiss a half ounce of cocaine.

On July 18, 1990, the day on which the indictment was based, Weiss made a telephone call to Stark from a pay telephone in a Builder's Square parking lot. After 39 minutes, the white Mustang drove into the lot, circled, and parked in an adjoining lot. Stark exited the car and walked to Weiss' car. Stark and Weiss talked inside the car, and then Stark walked back to the Mustang and got in it. After a short period, Stark returned to Weiss. Weiss gave him $600 in bills which Weiss had previously photocopied. Stark went back to the Mustang and returned to Weiss with seven one-sixteenth-ounce bags of cocaine. Weiss activated the arrest signal.

Agent Raymond McGury watched the events in the parking lot. While Stark had walked to Weiss' car the first time, the Mustang moved to a spot inside the Builder's Square lot. Defendant exited from the driver's seat, and Russell Marcellis exited from the passenger's seat. They opened the hood of the car and looked at the engine for a couple minutes. When Stark returned, the men closed the hood and entered the car. When Stark walked back to Weiss' car, the Mustang moved closer to the car.

When Weiss made the signal, McGury and other agents converged upon the Mustang. Defendant ran into a marsh and a ravine. A canine unit arrested him an hour later. Marcellis did not run. Stark and Weiss found the $600 of recorded bills underneath the floor mat of the driver's side floorboard.

At this point in the trial, the court recessed to consider allowing the State's proffered hearsay statements of Stark. The court allowed the statements and overruled defendant's objection.

After the recess, Weiss testified he met Stark on June 3, 1990, in the Cloverdale Tap. Stark told him that he could not sell cocaine because "his guy" was out of town. On the other occasions, Stark repeatedly referred to obtaining cocaine from "his guy." When they went to the Wheaton house, Stark said the weight of the cocaine was accurate because he watched "his guy" measure it on a scale. Weiss testified that he and Stark made frequent negotiations, with Stark leaving to confer with "his guy" to check on the availability of greater amounts of cocaine. Stark called to his friend "Mike" and told Weiss to wait in the bar while he worked on the price of the cocaine; Stark then talked with defendant. Stark told Weiss that "Mike" had lost two one-sixteenth-ounce bags in his car. After defendant was arrested, he gave his address as the house near Wheaton. Weiss testified that while he was in the bar he spent most of his time throwing darts. Weiss never saw defendant with

drugs or taking money. Weiss never searched Stark prior to his trips to defendant.

Defendant testified that on July 17, 1990, Stark, a friend from the Cloverdale Tap, asked him for a ride to a festival in Glendale Heights. Stark told him he had to stop at the Builder's Square lot to meet a friend. Defendant denied possessing any drugs and denied knowing Stark was going to sell drugs. Defendant and Marcellis went outside the car to remove the lens covers from the headlights. Stark came back and told defendant that he needed more time to talk to his friend to determine if the friend wanted a ride or if he would stay by the car. After Stark left, men with guns ran towards him through the dark parking lot. Defendant testified that he "freaked" and ran away. Defendant denied putting $600 under his seat. Defendant said he frequently went to the Cloverdale Tap to play darts.

The trial court found defendant accountable for the delivery of the cocaine and entered a conviction. The court sentenced him to 4½ years' imprisonment and imposed a fine of $1,000.

Defendant argues that the trial court erred in finding that the State had demonstrated a *prima facie* case of a conspiracy so as to admit the hearsay statements of Stark as a coconspirator. Defendant argues that the evidence introduced prior to the hearsay statements did not show defendant agreed to any joint venture with Stark such that they became conspirators; defendant notes the State must show a defendant made affirmative acts of agreement. *Darnell*, 214 Ill. App. 3d at 362.

The State argues that evidence of the conspiracy was shown by Stark's visits with defendant every time Stark delivered cocaine to Weiss and by the presence of the money under defendant's floor mat in a small car. The trial court mentioned that it relied on *People v. Goodman* (1980), 81 Ill. 2d 278. In *Goodman*, the police found the marked currency on the defendant after the transaction; the court inferred a conspiracy from this evidence. (81 Ill. 2d at 284.) Similarly, here, the police found the $600 in an area under defendant's control. The driver and owner of a car who has immediate and exclusive control over the inside of the passenger area has the constructive and knowing possession of an item within his immediate access and control. (*People v. McNeely* (1981), 99 Ill. App. 3d 1021, 1024-25.) Agent McGury saw that defendant was the only driver of the car on July 17. The record permits a fair inference that the driver knew what someone was placing under his feet where the car was small.

Defendant cites two similar cases where the defendants were charged with delivering a controlled substance when they drove the codefendants to the delivery spot. (*People v. Darnell* (1990), 214 Ill. App. 3d 345; *People v. Duckworth* (1989), 180 Ill. App. 3d 792.) The mere appearance of the defendant at the delivery site did not create an inference that the alleged conspirators were in agreement. (*Duckworth*, 180 Ill. App. 3d at 795.) In *Duckworth*, the nonhearsay evidence showed the defendant made only a single appearance to drive the declarant to the site of the delivery. (180 Ill. App. 3d at 795.) In *Darnell*, the two alleged conspirators were present for the last delivery only; the agents had made five previous buys from the primary defendant.

The facts of this cause are more similar to those of *Goodman* and of *People v. Sauer* (1988), 177 Ill. App. 3d 870, 877, in which the defendant appeared during several deliveries of cocaine. Here, defendant was present each time Weiss bought drugs from Stark. Defendant drove Stark to the house when Weiss wanted to buy more cocaine. The existence of the agreement need not be proved by direct evidence, but may be inferred from all the surrounding facts and circumstances. (*Sauer*, 177 Ill. App. 3d at 877.) Defendant also tried to flee the arrest, which may be considered evidence of guilt, and his close association with Stark can be considered evidence of agreement and accountability. (*People v. Coleman* (1991), 223 Ill. App. 3d 975, 992.) These facts, in addition to the location of the purchase money, demonstrate that the State established the threshhold to activate the coconspirator exception to the hearsay rule. The State presented *prima facie* evidence that defendant and Stark were in agreement. Thus, the hearsay statements of Stark were admissible as the admissions of a coconspirator.

For the above reasons, the judgment of the circuit court is affirmed.

Affirmed.

McLAREN and GEIGER, JJ., concur.