THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MARK SWERDLOW *et al.*, Defendants-Appellees.

Fifth District    No. 5—94—0270

Opinion filed March 8, 1995.—Rehearing denied March 31, 1995.

Henry Bergmann, State's Attorney, of Carlyle (Norbert J. Goetten, Stephen E. Norris, and Scott A. Manuel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Angelo Ruggiero, of Chicago, and R. Edward Veltman, Jr., of Crain, Cooksey, Veltman & Miller, Ltd., of Centralia, for appellees.

JUSTICE WELCH delivered the opinion of the court:

On September 28, 1993, defendants Mark A. Swerdlow and Abraham J. Rosen were charged by information in the circuit court of Clinton County with conspiracy to commit felony theft in that they agreed with each other and with Richard J. Talach, Sherrillyn C. Talach, and William Douglas to commit a theft of film. William Douglas, one of the alleged coconspirators, was arrested while committing an act in furtherance of this conspiracy and agreed to cooperate with the authorities in apprehending and prosecuting the other coconspirators. Accordingly, he made several court-authorized tape recordings of his conversations with coconspirators Sherrillyn C. Talach and Richard J. Talach. Neither Douglas nor the Talachs are defendants in the instant prosecution.

On October 27, 1993, defendants filed motions *in limine* asking the court to exclude from evidence any statements of Douglas or any of the other coconspirators that were made after Douglas' arrest on January 14, 1993. Defendants' argument appears to be that upon Douglas' arrest and agreement to cooperate with the police, he was no longer a coconspirator with defendants and the alleged conspiracy terminated. Defendants argue that statements of coconspirators after the conspiracy has terminated are not admissible against a defendant because they cannot be in furtherance of the conspiracy.

Relying on *People v. Breton* (1992), 237 Ill. App. 3d 355, 603 N.E.2d 1290, and *People v. Foster* (1983), 99 Ill. 2d 48, 457 N.E.2d 405, the trial court granted defendants' motions *in limine*, holding that once Douglas agreed to cooperate with the police, the conspiracy became unilateral and terminated and any statements made after Douglas'

arrest were not in furtherance of the conspiracy and are therefore inadmissible. The State appeals. We reverse.

■ The State concedes that statements of Douglas subsequent to his arrest which implicate the defendants are inadmissible under *People v. Eddington* (1984), 129 Ill. App. 3d 745, 774, 473 N.E.2d 103, 123. Statements made by an alleged coconspirator upon confession or after arrest are not admissible against a defendant unless made in his presence and assented to by him. (*Eddington*, 129 Ill. App. 3d at 774, 473 N.E.2d at 123.) Evidence that coconspirators implicated defendant in confessions or post-arrest statements is not admissible against the defendant, whether presented through the testimony of coconspirators, the testimony of the officers who took their statements, or the statements or confessions themselves. (*Eddington*, 129 Ill. App. 3d at 774, 473 N.E.2d at 123.) What is admissible against each and every coconspirator under the coconspirators' exception to the hearsay rule is any act or declaration (1) by a coconspirator of defendant (2) committed in furtherance of the conspiracy (3) during its pendency, (4) provided that a foundation for its reception is laid by independent proof of the conspiracy. *Eddington*, 129 Ill. App. 3d at 771, 473 N.E.2d at 121.

■ The trial court was correct that a conspiracy conviction in Illinois requires proof of an agreement based on the bilateral theory of conspiracy rather than the unilateral theory of conspiracy. (*People v. Breton* (1992), 237 Ill. App. 3d 355, 360, 603 N.E.2d 1290, 1294.) An agreement based on the bilateral theory is one between a defendant and at least one other person where both parties actually intend to agree. (*Breton*, 237 Ill. App. 3d at 360, 603 N.E.2d at 1294.) Thus, under the bilateral theory of conspiracy, a purported agreement between a defendant and a government agent only feigning agreement will not support a conspiracy conviction because there is no actual agreement. (*Breton*, 237 Ill. App. 3d at 360, 603 N.E.2d at 1294.) An agreement between a defendant and a government agent only feigning agreement is an agreement based on the unilateral theory. (*Breton*, 237 Ill. App. 3d at 360, 603 N.E.2d at 1295.) In such a unilateral agreement, only one person actually intends to agree. *Breton*, 237 Ill. App. 3d at 360, 603 N.E.2d at 1295; see also *People v. Foster* (1983), 99 Ill. 2d 48, 457 N.E.2d 405.

Relying on *Breton* and *Foster*, the trial court apparently reasoned that once Douglas agreed to cooperate with the police he was no longer a coconspirator and that this made the alleged conspiracy "unilateral" and terminated the conspiracy so that any statements of coconspirators could not have been made in furtherance of the conspiracy, as required by the coconspirators' exception to the hearsay rule. This was error.

■ In the instant case, the conspiracy as charged involved five people. While the withdrawal of Douglas from the conspiracy does render any statements he may have made after his arrest inadmissible as not in furtherance of the conspiracy, it neither terminated the conspiracy nor made it unilateral with respect to the other four coconspirators. Indeed, the conspiracy between the four remaining coconspirators, including defendants, continued even after Douglas' withdrawal. Thus, any acts or declarations made by the remaining coconspirators in furtherance of the conspiracy were admissible against each and every coconspirator, including defendants. Accordingly, the tape-recorded statements of Sherrillyn C. Talach and Richard J. Talach are admissible against defendants under the coconspirators' exception to the hearsay rule, provided the proper foundation is laid.

This conclusion is supported by a multitude of reported cases in which an undercover government agent, which Douglas became, testified as to statements made to him or in his presence by coconspirators who did not know him to be a government agent. These out-of-court statements of coconspirators, which implicated the defendant, were admissible under the coconspirators' exception to the hearsay rule, and the government agent could testify to those statements. See, *e.g.*, *People v. Goodman* (1980), 81 Ill. 2d 278, 408 N.E.2d 215; *People v. Soteras* (1987), 153 Ill. App. 3d 449, 505 N.E.2d 1134; *People v. Melgoza* (1992), 231 Ill. App. 3d 510, 595 N.E.2d 1261.

*People v. Columbo* (1983), 118 Ill. App. 3d 882, 455 N.E.2d 733, is instructive on this point. In that case, defendant Columbo agreed with her boyfriend, DeLuca, to kill Columbo's family. She solicited two people, Sobczynski and Mitchell, to do the killing. Sobczynski and Mitchell either agreed and then withdrew, or apparently, but not actually, agreed. At trial, Sobczynski and Mitchell testified against Columbo, who was convicted. On appeal, Columbo argued that a conspiracy to kill her family never existed because Sobczynski and Mitchell did not actually intend to kill anyone. This court rejected this argument, stating:

"This argument is unpersuasive in view of the many Illinois cases in which the testimony of an undercover police officer[,] who never had any intention of committing the criminal act which the accused conspired to commit, was admitted into evidence to prove the existence of a conspiracy between the accused and his coconspirators. [Citations.] Regardless of the intentions of Sobczynski and Mitchell, therefore, their testimony sufficiently established that Columbo conspired with DeLuca to murder her family. Consequently, her statements to them were admissible on

the ground that they were designed to effect the murders and were, thus, in furtherance of the conspiracy." (*Columbo,* 118 Ill. App. 3d at 946-47, 455 N.E.2d at 780.)

In that case, Columbo also argued that because Sobczynski and Mitchell ceased to be involved in the alleged conspiracy after a certain date, any declarations which coconspirator DeLuca made to them after that date are inadmissible. Again this court rejected this argument. We pointed out that, regardless of Sobczynski's and Mitchell's roles, Columbo conspired with DeLuca to kill her family. This conspiracy continued until the murders were completed. Thus, DeLuca's statements until that time were made during the pendency of the conspiracy and were, therefore, properly admitted under the coconspirators' exception to the hearsay rule.

The case at bar is remarkably similar to *Columbo*. Douglas had agreed to the conspiracy but then withdrew, unbeknownst to the other coconspirators. However, Douglas' withdrawal did not terminate the conspiracy between the defendants and the Talachs, just as Sobczynski's and Mitchell's withdrawal did not terminate the conspiracy between Columbo and DeLuca. Furthermore, statements made in furtherance of the conspiracy by the Talachs to Douglas after his withdrawal from the conspiracy were admissible against defendants because the conspiracy between the Talachs and defendants continued.

The trial court erred in finding that the alleged conspiracy had terminated so that statements of coconspirators could not be in furtherance of the conspiracy. Provided the State can lay the proper foundation by independent proof of a conspiracy, the tape-recorded statements of the Talachs to Douglas are admissible into evidence to the extent they were made in furtherance of the conspiracy. Accordingly, the trial court erred in granting defendants' motions *in limine* to exclude the tape-recorded conversations from evidence. We therefore reverse the order of the circuit court of Clinton County granting defendant's motions *in limine*.

For the foregoing reasons, the order of the circuit court of Clinton County granting defendants' motions *in limine* is reversed, and this cause is remanded to that court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

MAAG, P.J., and CHAPMAN, J., concur.