THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE RUBEN RODRIGUEZ, Defendant-Appellant.

Second District   No. 2—96—0708

Opinion filed July 24, 1997.

Carol J. Lazzaro and Henry Lazzaro, both of Lazzaro & Lazzaro, P.C., and Janice C. Orr, both of Waukegan, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE THOMAS delivered the opinion of the court:

Defendant, Jose Ruben Rodriguez, was indicted by a grand jury on one count of aggravated discharge of a firearm (720 ILCS 5/24—1.2(a)(2) (West 1994)) and one count of unlawful use of weapons (720 ILCS 5/24—1(a)(4) (West 1994)). Following a jury trial, defendant was

found guilty only on the latter count. Defendant was sentenced to 24 months' probation. We affirm.

At trial, Rosa Rodriguez (Rosa R.), defendant's wife, testified that she received a telephone call at 2:30 a.m. on June 24, 1995, concerning her 16-year-old daughter, Rosa Gallegos (Rosa G.). Rosa R. was informed that Rosa G. had not returned to Rosa R.'s mother's house, located at 315 South Victory Street in Waukegan, Illinois. Rosa R. and defendant were worried, so they drove over to her mother's residence. At 4 a.m., a vehicle approached the residence. While Rosa R. and defendant were outside the residence, she observed her daughter exit the vehicle. Defendant was upset. He approached the vehicle and asked the driver to stop the vehicle. The vehicle immediately took off. Defendant got into the family vehicle, a brown, four-door sedan. Rosa R. took her daughter inside the residence. Rosa R. did not see defendant drive off in the family vehicle. She observed that defendant entered the residence two to three minutes later. According to Rosa R., defendant owns a handgun, but she did not see it on defendant's person that evening.

Rosa Gallegos, defendant's stepdaughter, testified that she was riding in a vehicle at 4 a.m. on June 24, 1995, with two friends, Michael Rodriguez and Rogelio Montoya. The vehicle pulled up in front of a house next to her grandmother's residence and she exited the vehicle. Defendant walked toward the vehicle. She and her mother entered the residence. She observed that defendant entered the residence one to two minutes later. She did not see a gun on defendant's person that evening.

Rosa G. further testified to giving a written statement to the police on July 11, 1995. According to that statement, defendant got into their family vehicle and drove off after the other vehicle. At trial, however, Rosa G. testified that she never saw defendant drive after the other vehicle because she was already in her grandmother's residence with her mother.

Denise Beausoleil testified that she resided at 343 Westmoreland Avenue in Waukegan. She was outside walking her dog at 4 a.m. on June 24, 1995. She observed two vehicles speeding north on Westmoreland Avenue. The first vehicle was smaller and darker than the second vehicle, a sedan-type vehicle. As they approached Grand Avenue, she heard tires screech and what sounded like four gunshots. She then went inside and telephoned the police.

William Brazil testified that he was employed as an officer with the Waukegan police department. On June 24, 1995, at approximately 4:05 a.m., he was dispatched to the intersection of Grand Avenue and Westmoreland Avenue. He did not find anything that would indicate that gunshots had been fired at that location.

Jose Gilberto Rodriguez (Jose) testified that at approximately 1 p.m. on July 3, 1995, he was visited at his home by defendant. Defendant complained that Jose's son, Michael Rodriguez, had been out with defendant's stepdaughter at 4 a.m. About five minutes into their conversation, Michael entered the residence. After further conversation, defendant told Jose, "I am a sharpshooter."

David Yarc testified that he was employed as a detective with the Waukegan police department. Pursuant to an investigation about gunshots being fired at the intersection of Grand Avenue and Westmoreland Avenue, he interviewed Rosa G. on July 11, 1995. He asked her to prepare a written statement about the events of June 24, 1995. According to the statement, when Yarc asked Rosa G., "What car did [defendant] leave in?" she responded, "Our family car, a four door brown car."

Michael Rodriguez testified under a grant of immunity from the State. He testified that at 4 a.m. on June 24, 1995, he was driving his father's red Mustang with Rogelio Montoya and Rogelio's girlfriend, Rosa G. He dropped Rosa G. off at a residence on Victory Street. He drove away as a man was saying something to him. About one mile from that residence, he noticed a four-door vehicle following him. The two vehicles drove along Westmoreland Avenue toward Grand Avenue, where Michael heard loud popping noises. The vehicle behind his then turned away.

Michael also testified that on July 3, 1995, he went to his father's house and defendant was there. Michael stated to his father, "That's the man that shot me." Michael reported the events of June 24, 1995, to the police on July 4, 1995.

Michael further testified to giving a written statement to the police on July 6, 1995. According to that statement, defendant was driving the vehicle that followed his on June 24, 1995. According to the statement, when Michael stopped his vehicle at the stop sign at the intersection of Westmoreland Avenue and Grand Avenue, defendant came up next to him and pointed a gun at him. As Michael drove through the intersection, he heard at least six gunshots. In the statement, Michael claimed that defendant approached him the following day and threatened to shoot him. At trial, however, Michael testified that he never saw the driver of the other vehicle. He also testified that defendant never approached him the next day and threatened to shoot him.

Following the trial, the jury found defendant guilty of unlawful use of weapons. Defendant was sentenced to 24 months' probation. Defendant filed a timely appeal.

On appeal, defendant raises four issues for our review. He

contends that (1) the trial court erred in admitting the hearsay testimony of Jose and Michael; (2) the trial court erred in admitting the prior written statements of Rosa G. and Michael as substantive evidence; (3) the trial court erred in granting the State's motion *in limine* to prohibit the introduction of evidence of the alleged gang involvement of the State's witnesses; and (4) the State failed to establish his guilt beyond a reasonable doubt.

## I

Defendant's first contention on appeal is that the trial court erred in admitting the hearsay testimony of Jose and Michael.

The State argues that defendant waived this issue for failing to object to the testimony of Jose and Michael in question at trial (see *People v. Stewart*, 105 Ill. 2d 22, 56 (1984)) and for failing to raise an objection to the testimony in his posttrial motion (see *People v. Enoch*, 122 Ill. 2d 176, 186 (1988)). Upon review of the record, we find that defendant failed to object to the testimony of Jose and Michael at trial. Defendant also failed to object to the testimony of Jose in his posttrial motion. Notwithstanding waiver, we elect to address the issue. See *People v. Roberts*, 263 Ill. App. 3d 348, 350 (1994) (the waiver rule is a limitation on the parties and not on the court).

■ Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is generally inadmissible unless it falls within an exception to the rule. *Laughlin v. France*, 241 Ill. App. 3d 185, 192 (1993).

## A

■ Defendant initially contends that the trial court erred in admitting the hearsay testimony of Jose as to his conversation with defendant on July 3, 1995, concerning events on the date in question.

During direct examination of Jose by the prosecutor, the following colloquy ensued:

"Q. Specifically, what did you say?

A. I told him, I said, 'You can't do that *** you can hurt somebody.'

* * *

Q. After your statement, what did this defendant then say to you?

A. The Defendant stated to me, I asked him if he done it. He hesitated a little bit. Later on he come up about a minute later, he told me, 'I am a sharp shooter.'

* * *

Q. And after the hesitation, that is when this defendant responded to you, 'I am a sharp shooter'?

A. Yes."

We find the testimony elicited from Jose was offered to prove the truth of the matter asserted, that defendant was the person responsible for firing the gunshots at the vehicle being driven by Michael on June 24, 1995. Accordingly, such testimony was hearsay and inadmissible unless it fell within an exception to the hearsay rule.

The State argues that the hearsay testimony was properly admitted as an admission by defendant. We disagree. An admission is a statement or conduct from which guilt may be inferred, when taken with other facts, but from which guilt does not necessarily follow. *Stewart*, 105 Ill. 2d at 57. Taken with the other facts of this case, we do not find the statement to be one from which guilt may have been inferred.

## B

■ Defendant further contends that the trial court erred in admitting the hearsay testimony of Michael concerning the conversation he interrupted between his father and defendant on July 3, 1995.

During direct examination of Michael by the prosecutor, the following colloquy ensued:

"Q. Didn't you remark to your father, 'That's the man that shot me'?

A. Yes, I did say that."

Citing *People v. Rogers*, 81 Ill. 2d 571 (1980), the State contends that Michael's testimony was properly admitted because it constituted a previous identification of defendant as the shooter. The State's reliance on *Rogers* is misplaced. *Rogers* provides that the hearsay rule does not operate to bar the admission of extrajudicial identification where such evidence is used in corroboration of an in-court identification, not as substantive evidence. *Rogers*, 81 Ill. 2d at 579. Here, the identification testimony was admitted as substantive evidence that defendant was the person responsible for firing the gunshots at the vehicle being driven by Michael on June 24, 1995. Accordingly, the admission of such testimony was improper.

For the above reasons, we conclude that the trial court erred in admitting the hearsay testimony of Jose and Michael. However, we find the error to be harmless. This court has previously stated that the admission of hearsay is not reversible error if there is no reasonable probability that the jury would have acquitted the defendant if the hearsay testimony had been excluded, such as where properly admitted evidence proves the same matter or there is overwhelming evidence of the defendant's guilt. *People v. Cordero*, 244 Ill. App. 3d 390, 392 (1993). Such is the case here, where other evidence served as proof of defendant's guilt.

## II

Defendant's second contention on appeal is that the trial court erred in admitting the prior written statements of Rosa G. and Michael as substantive evidence under section 115—10.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—10.1 (West 1994)).

■ Ordinarily a party may only use a prior inconsistent statement for impeachment. *People v. Salgado*, 263 Ill. App. 3d 238, 247 (1994). However, section 115—10.1 of the Code permits a party to use a witness' prior inconsistent statement as substantive evidence under the circumstances provided therein. Section 115—10.1 of the Code provides, in pertinent parts:

"In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—
        ***

(2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and

(A) the statement is proved to have been written or signed by the witness[.]" 725 ILCS 5/115—10.1 (West 1994).

At issue is whether Rosa G. and Michael had "personal knowledge" as used in subsection (c)(2). "Personal knowledge" means that the witness whose prior inconsistent statement is being offered into evidence must have actually seen the events that are the subject of the statement. *People v. Cooper*, 188 Ill. App. 3d 971, 973 (1989).

## A

■ Defendant initially contends that the trial court erred in admitting the prior written statement of Rosa G. because she lacked "personal knowledge" as used in subsection (c)(2).

At trial, Rosa G. testified that, when she arrived at her grandmother's residence on June 24, 1995, defendant walked toward the vehicle in which she was riding. She further testified that she exited the vehicle and went directly inside the house. Consequently, she did not see whether defendant got into another vehicle. She next saw defendant inside the house. Over defense counsel's objection, Rosa G.'s written statement of July 11, 1995, was thereafter admitted into evidence. The written statement provided, in part, "I went inside the house with my mother, and I know—my mother. All I know is that [defendant] got in the car and went after them."

Defendant argues that Rosa G. did not have personal knowledge of whether defendant followed after Michael in the family car. Defendant cites the fact that Rosa G. testified at trial that she did not observe whether defendant chased after the vehicle. Rather, she testified that her prior written statement indicates that defendant chased after the vehicle based upon what Michael told her. Citing *Cooper*, defendant contends that the personal knowledge required by the statute is not that which is acquired by being told something. *Cooper*, 188 Ill. App. 3d at 973. However, the portion of Rosa G.'s testimony referring to being told of defendant's actions by Michael was stricken on hearsay grounds. Regardless, in meeting the requirement that the prior statement be based on personal knowledge, we hold that the prior statement may be admitted in limited circumstances even though the witness declares that the prior statement was based upon what the witness had been told. See *People v. Fauber*, 266 Ill. App. 3d 381 (1994). In *Fauber*, the trial court admitted the prior inconsistent statement of a witness, ruling that the determination of whether the statement was from firsthand information must be determined from the face of the statement and not from the later testimony of the recanting witness. *Fauber*, 266 Ill. App. 3d at 390. The prior statement at issue in *Fauber* was of a witness who testified to being told of certain events, but who had been present at the time the events occurred. The Appellate Court, Fourth District, affirmed the admission of the witness' prior inconsistent statement. *Fauber* is therefore distinguishable from *Cooper*, where the prior statement at issue was of a witness who was not present at the time the events occurred.

In the instant action, while Rosa G. testified that she was told of defendant's pursuit of the vehicle, her written statement to the police indicated that she was speaking from information she gained from her personal vantage point in front of her grandmother's residence. Thus, we find she possessed the requisite personal knowledge of the events in her statement despite her later denial of the same at trial. We find that the trial court properly admitted the prior inconsistent statement as substantive evidence.

## B

Defendant further contends that the trial court erred in admitting the prior written statement of Michael because he lacked "personal knowledge" as used in subsection (c)(2).

At trial, Michael testified that he did not see the driver of the vehicle that followed him on June 24, 1995. Michael's written statement of July 6, 1995, was thereafter admitted into evidence. The

written statement provided that Michael saw defendant driving the vehicle that was chasing his and that Michael saw defendant pointing a gun at him. Michael further testified at trial that his identification of defendant was based on what Rogelio had told him.

Defendant argues that Michael did not have personal knowledge of whether defendant was the driver of the vehicle that pursued him or whether defendant fired the shots that he heard. Defendant cites the fact that Michael testified at trial that he did not observe whether defendant was the driver of the vehicle. He testified at trial that his prior written statement indicates that, based upon what Rogelio told him, defendant chased after the vehicle and pointed a gun toward him.

In the instant action, Michael's written statement to the police indicated that he was speaking from information he gained from his personal vantage point while driving his vehicle away from the residence. Thus, we find he too possessed the requisite personal knowledge of the events in his statement despite his later denial of the same at trial. We find that the trial court properly admitted the prior inconsistent statement as substantive evidence.

### III

■ Defendant's third contention on appeal is that the trial court improperly granted the State's motion *in limine* to exclude evidence of the alleged gang involvement of the State's witnesses.

In this case, Michael testified that he drove away from the residence at 315 South Victory Street after dropping off Rosa G. About one mile down the road, he noticed that he was being followed by another vehicle. As the two vehicles proceeded to and through the intersection of Westmoreland Avenue and Grand Avenue, Michael testified that he heard loud popping noises and that the vehicle pursuing his then turned away. Denise Beausoleil testified that she saw two vehicles speed along Westmoreland Avenue toward the subject intersection and heard what sounded like gunshots. Unlike Denise, neither Michael nor Rogelio, the occupants of the first vehicle, immediately reported the incident to the police. Defendant contends that these circumstances were strikingly similar to gang-related drive-by shooting incidents, providing an alternate explanation for the incident in which he is accused of having played a part. Hence, defendant contends that the trial court erred in granting the State's motion *in limine* to prohibit questions concerning the alleged gang involvement of Michael.

Evidence of gang membership, like other evidence, is admissible if relevant to an issue in dispute, and its probative value is not

substantially outweighed by its prejudicial impact. *People v. Johnson*, 159 Ill. 2d 97, 118 (1994). A trial court may reject offered evidence on the ground of irrelevance if it has little probative value due to its remoteness, speculativeness, uncertainty, or its possibly unfair prejudicial nature. *People v. Harris*, 262 Ill. App. 3d 35, 47 (1994). In *Harris*, the trial court limited inquiry of witnesses' gang membership. Notwithstanding defendant's characterization of the evidence presented, the trial court found no competent evidence in the record to show that the shooting involved therein was in any way induced by prior gang activity. This court affirmed the ruling of the trial court.

Here, in reaching its decision to bar evidence of alleged gang activity, the trial court found the evidence to be lacking in relevance. Having reviewed the record, we find the relationship between gang membership and this shooting incident to be speculative at best. Thus, we agree with the trial court's decision to grant the State's motion *in limine*.

## IV

■ Defendant's final contention on appeal is that the State failed to establish his guilt beyond a reasonable doubt.

A conviction must be based upon proof beyond a reasonable doubt. *People v. Foules*, 258 Ill. App. 3d 645, 653 (1993). The reviewing court's duty is not to ask itself whether it believes the evidence establishes guilt, but whether the evidence viewed in a light most favorable to the prosecution would allow any rational trier of fact to find the essential elements of the crime proved beyond a reasonable doubt. *Foules*, 258 Ill. App. 3d at 653. A reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. *People v. Winfield*, 113 Ill. App. 3d 818, 826 (1983). The reversal of a conviction is required only where the defendant can show that the evidence is so unsatisfactory or improbable as to create a reasonable doubt of the defendant's guilt. *People v. Murray*, 194 Ill. App. 3d 653, 656 (1990).

■ Defendant was convicted of unlawful use of weapons (720 ILCS 5/24—1(a)(4) (West 1994)). A person commits the offense of unlawful use of weapons pursuant to subsection (a)(4) when he knowingly "[c]arries or possesses in any vehicle or concealed on or about his person except when on his land or in his own abode or fixed place of business any pistol, revolver, stun gun or taser or other firearm." 720 ILCS 5/24—1(a)(4) (West 1994).

■ Applying the above principles to the case at bar, despite the lack of physical evidence, we conclude that the evidence is sufficient

to sustain defendant's conviction of unlawful use of weapons. According to Rosa G.'s written statement, Rosa G. was dropped off around 4 a.m. at her grandmother's house by Michael. Defendant took off in the family car in pursuit of the vehicle driven by Michael. Denise testified that she was walking outside shortly after 4 a.m., that she saw two vehicles speeding toward the intersection of Westmoreland Avenue and Grand Avenue, and that she heard what sounded like gunshots being fired. According to Michael's written statement, he realized that he was being followed by another car. When he stopped his vehicle at the stop sign at the intersection, defendant came up next to him and pointed a gun at him. As Michael drove through the intersection, he heard gunshots.

We recognize that at trial both Rosa G. and Michael recanted portions of their prior written statements linking defendant to the shooting incident. However, it was for the jury to weigh their credibility and to resolve conflicts or inconsistencies in their testimony. See *People v. Frieberg*, 147 Ill. 2d 326, 360 (1992). We find that a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

For the foregoing reasons, we affirm the order of the circuit court of Lake County finding defendant guilty of unlawful use of weapons and sentencing him to 24 months' probation.

Affirmed.

RATHJE and HUTCHINSON, JJ., concur.