FIFTH DIVISION

June 19, 1998

No. 1-97-0238

THE PEOPLE OF THE STATE OF ILLINOIS, )        Appeal from

)     the Circuit Court

Plaintiff-Appellee, )      of Cook County.

)

v. )      No. 96-CR-10342

)

ONTARIO ERVIN, )         Honorable

)       Edward Fiala,

Defendant-Appellant. )      Judge Presiding.

JUSTICE THEIS delivered the opinion of the court:

Defendant, Ontario Ervin, was charged by indictment with first-degree murder pursuant to section 9-1(a)(1) of the Criminal Code of 1961.  Ill. Rev. Stat. 1989, ch. 38, par. 9-1(a)(1) (now 720 ILCS 5/9-1(a)(1) (West 1996)).  Following a jury trial, defendant was convicted and sentenced 
to 28 years' imprisonment.  Defendant now appeals, contending that (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the circuit court erred by allowing the State to introduce defendant's statement as an admission; (3) the court erred by admitting coconspirator statements because the State did not establish defendant's participation in the conspiracy by independent evidence; and (4) the prosecutor committed reversible error in making certain statements to the jury during closing argument.  For the following reasons, we affirm.

On September 20, 1992, the 411 Club, located at 411 East 63rd Street in Chicago, Illinois, was robbed by several men wearing masks and wielding guns.  During the robbery, the bar manager, John Conley, was shot and killed by Norman Williams, one of the robbers.  Except for Williams, all of the robbers wore stocking masks to hide their identity.  The police found three masks on the sidewalk outside of the bar.  Several men were arrested shortly after the crime.  On September 22, 1992, Larry Gullette confessed to the crime and implicated Brian Collins, Nathan Green, Demon Body, Norman Williams, and defendant.

At defendant's trial in October 1996, the State presented five robbery witnesses and Larry Gullette.  None of the robbery witnesses could specifically identify defendant.  Londa Higgins and Katherine Allen both testified to seeing a man with a red jacket and another man with a silver gun wearing a stocking cap on his face.  Erma Pitchford also saw a man wearing a stocking cap with a silver gun in his hand.

Ricardo Williams, an employee of the 411 Club, testified that he saw a man with a gun wearing a mask, and another man standing at the front door yelling.  The man at the front door also had a gun and was not wearing a mask.  Williams later identified the man at the door in a police lineup.  That man was not defendant.  

Charles Clark testified that he was looking out the front door of the 411 Club when he saw a group of guys pulling stocking masks down onto their faces.  Clark returned to the club and pulled the door closed, trying to hold it shut.  When he could no longer hold the door shut, Clark tried to run to the back of the bar.  As he was turning to run, one of the men held a gun to Clark's head and took his keys and wallet.  Clark then tried to leave the bar, but a man standing at the door told Clark he could not leave.  Clark recalled the man had a gold tooth.  Someone then grabbed Clark and threw him to the floor.  From the floor, Clark saw another person enter the bar but could not identify that person.  

After stipulations regarding medical and forensic evidence, the State then called Larry Gullette.  Gullette testified that he had received a reduced sentence for his armed robbery conviction pursuant to the robbery of the 411 Club, in exchange for his testimony against defendant.  Gullette testified that the State dropped the murder charge in exchange for his testimony.   

Larry Gullette testified that on September 19, 1992, he was with Brian Collins, Nathan Green, Demon Body, and defendant at defendant's sister's apartment discussing robbing the 411 Club.  Upon hearing their discussion, defendant's sister kicked them out of the apartment.  The five men then moved to Brian Collins' sister's apartment in the same building.  Gullette testified that Collins got three pair of stockings and cut them up with scissors.  In the apartment, Brian Collins and defendant both had guns.

Gullette testified that the men planned to enter the club with pistols and to tell everyone to lay down.  The men then left the apartment.  On their way to the 411 Club, the five ran into Norman Williams who called Brian Collins over and the two spoke for awhile.  Norman Williams indicated he would join the others in the crime and the six men then entered the abandoned building next door to the 411 Club.  According to Gullette, Norman Williams made defendant give Williams the gun.  Then, Norman Williams started telling everyone what to do.  At that point, defense counsel objected to Gullette's testimony as to Williams' statements.  Over defendant's objection, the court allowed Gullette to continue.

According to Gullette, the robbery went as planned.  Nathan Green and Brian Collins went to the back of the bar.  Gullette and defendant stayed in the middle of the bar and collected money from the patrons.  Gullette testified that defendant pulled money from the cash register.  At one point, Gullette saw defendant on top of the bar and then down again.

Next, the State called Officer Ken Epich of the Chicago Police Department.  On March 29, 1996, Officer Epich was present at the 7th District police station when defendant sought to turn himself in on a probation warrant.  Defendant indicated to Officer Epich that he thought he had a second warrant for murder.  After confirming defendant's outstanding warrant for first degree murder, Officer Epich advised defendant of his rights and then questioned defendant regarding the murder warrant.  Officer Epich testified that "[defendant] told me, he was with some dudes, who stuck up a fag bar, the 411 Club at 63rd and King."  On cross-examination, Epich conceded that he had written the initial arrest report around the time defendant was arrested at 5:12 p.m. but that defendant's statement was not memorialized until Epich's supplementary report was written around 8 p.m. after Epich had spoken to the detectives investigating the murder.

After the State rested, defense counsel made a motion for a directed verdict, which was denied.  The defense presented no case.  After closing arguments, the court instructed the jury.  The jury found the defendant guilty of first degree murder and the court sentenced him to 28 years' imprisonment. 

On appeal, defendant first argues that the State did not prove beyond a reasonable doubt that defendant participated in the armed robbery.  Defendant contends that none of the State's evidence showed six men in the bar and the only evidence of defendant's involvement came from Larry Gullette, an inherently incredible witness.  The jury, however, was repeatedly informed as to the reliability of Gullette's testimony and as to the deal Gullette had made with the State.  The testimony of an accomplice is sufficient to sustain a conviction.  
People v. Jimerson
, 127 Ill. 2d 12, 44, 535 N.E.2d 889, 903 (1989).  Moreover, a criminal conviction will not be set aside unless the evidence is so improbable that there remains a reasonable doubt as to defendant's guilt.  
People v. Collins
, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276-77 (1985).  Here, defendant's conviction was not against the manifest weight of the evidence.   

Defendant next argues that the circuit court erred in admitting the statement made by defendant to Officer Epich at the time of defendant's arrest.  At trial, Officer Epich testified as follows:

"A The first question I asked him was [after giving the 
Miranda
 warning], what was the murder about, who was murdered?

Q And what did he state to you?

A He [the defendant] told me, he was with some dudes, who stuck up a fag bar, the 411 Club at 63rd and King."

Before trial, defendant presented a motion 
in
 
limine
 to exclude the statement which was denied.

On appeal, defendant argues the circuit court erred in admitting the ambiguous statement because it does not allow an inference of defendant's guilt necessary to constitute an admission.  The State counters that the defendant's statement is admissible and the circuit court did not abuse its discretion by allowing the statement.  
People v. Illgen
, 145 Ill. 2d 353, 364, 583 N.E.2d 515, 519 (1991).  

In Illinois, the proper evidentiary foundation for admission of prior out-of-court statements by a defendant is unclear.  The Illinois Supreme Court has defined an "admission" as "a statement or conduct from which guilt may be inferred, when taken in connection with other facts, but from which guilt does not necessarily follow."  
People v. Stewart
, 105 Ill. 2d 22, 57, 473 N.E.2d 840, 857 (1984).  Such admissions are not objectionable under the rule against hearsay.  
Stewart
, 105 Ill. 2d at 57, 473 N.E.2d at 857.   

One recent appellate case, however, has suggested distinctions between admissions by a party, and inculpatory admissions by a defendant as distinct from criminal confessions.  
People v. Aguilar
, 265 Ill. App. 3d 105, 637 N.E.2d 1221 (1994).  Accord 
People v. Shaw
, 278 Ill. App. 3d 939, 951, 664 N.E.2d 97, 105 (1996).  Until our supreme court provides guidance to the contrary, 
we analyze defendant's statement under the traditional and more stringent formula which requires an inference of guilt before the statement is admissible.  
People v. Stewart
, 105 Ill. 2d at 57, 473 N.E.2d at 857.  See 
People v. Grisset
, 288 Ill. App. 3d 620, 631, 681 N.E.2d 1010, 1018 (1997).

Defendant cites to 
People v. Rodriguez
, 291 Ill. App. 3d 55, 684 N.E.2d 128 (1997), as support for a case in which defendant's statement was held not to constitute an admission.  In 
Rodriguez
, defendant was charged with unlawful use of weapons after allegedly engaging the victim in a car chase and shooting at the victim.  According to the victim's father, when asked if he had done the shooting, defendant allegedly responded, "I am a sharp shooter."  
Rodriguez
, 291 Ill. App. 3d at 60-61, 684 N.E.2d at 131.  The court held that the statement was not an admission but, rather, was inadmissible hearsay because the statement was not one from which guilt could be inferred.  
Rodriguez
, 291 Ill. App. 3d at 61, 684 N.E.2d at 131.

In the instant case, defendant stated that "he was with some dudes, who stuck up a fag bar, the 411 Club at 63rd and King." Defendant's knowledge of the crime, inherent in his statement, allows the permissible inference regarding defendant's participation in the crime.  Thus, defendant's statement was properly admitted with the jury assessing its reliability.  "[I]t is the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of the witnesses, and to decide what weight should be given to the witnesses' testimony".  
Maple v. Gustafson
, 151 Ill. 2d 445, 452, 603 N.E.2d 508, 511-12 (1992).

Defendant next challenges the State's introduction of statements made by Norman Williams, as testified to by Larry Gullette, because the State did not prove through independent evidence that a conspiracy existed.  During Gullette's direct testimony, Gullette began testifying about statements made by Norman Williams prior to entering the bar:

"A Next thing that happened, Norman Williams started telling everybody what to do.

Q Okay.  

Tell us what Norman Williams said everybody was going to do?"

Defense counsel objected on hearsay grounds.  The State argued that the conversation constituted an exception to the hearsay rule as either (1) an admission by defendant as he was participating in the conversation; or (2) a statement in furtherance of the conspiracy.  The State further argued that the statements were not hearsay in that they were not offered to prove the truth of the directives but, rather, to prove the conspiracy.  Defense counsel again objected, arguing that the hearsay could not clearly establish a conspiracy.  The court ruled that Norman Williams' directions to the other conspirators were admissible and that defendant's participation, whether voluntary or not, was for the jury to decide.  The court preserved defense counsel's objection regarding any conspiracy language.

Gullette continued his testimony as to Williams' directions:

"Q What did Norman -- what assignment did Norman Williams give to everybody?

A Well, he pointed toward Nathan and Brian and say, you, 2, go to the back.

Q When you say that he pointed to Nathan and Brian, you mean Nathan Green and Brian Collins?

A Yes.

Q And what did he tell them to go?

A Yaw, go in first.  Yaw go to the back of the bar.

Q Okay.  

And then what did -- what else did Norman Williams say to the others?

A He said, you and you, pointing to me and [defendant], yaw just stay in the middle of the bar and make sure everybody lay down on the ground.  When they put their money on the floor, pick it up."

While we conclude that admission of the statements was not error, a discussion of the coconspirator exception to the hearsay rule is necessary.  

In Illinois, the coconspirator exception to the hearsay rule allows into evidence the acts and declarations of a coconspirator, made in furtherance of the conspiracy, even when those acts and declarations are made out of the defendant's presence.  
People v. Columbo
, 118 Ill. App. 3d 882, 945, 455 N.E.2d 733, 779 (1983).  Statements made in furtherance of the conspiracy are those having the effect of advising, encouraging, aiding, or abetting its perpetration.  
People v. Miller
, 128 Ill. App. 3d 574, 585, 470 N.E.2d 1222, 1229 (1984).

To admit Norman Williams' declarations in furtherance of the conspiracy into evidence, the State must provide 
prima
 
facie
 independent evidence of the conspiracy and defendant's participation in the conspiracy.  
People v. Ramey
, 151 Ill. 2d 498, 526-27, 603 N.E.2d 519 (1992); 
People v. Kabakovich
, 245 Ill. App. 3d 943, 944, 615 N.E.2d 855, 856 (1993).  "In establishing a prima facie case of conspiracy, proof of the agreement, which is the essence of a conspiracy, need not be proved by direct evidence, but may be inferred from all the surrounding facts and circumstances, including the acts and declarations of the accused defendant."  
People v. Gray
, 85 Ill. App. 3d 726, 729, 410 N.E.2d 493, 495 (1980); 
People v. Steidl
, 142 Ill. 2d 204, 234, 568 N.E.2d 837, 849 (1991), citing 
People v. Duckworth
, 180 Ill. App. 3d 792, 795, 536 N.E.2d 469, 472 (1989).  Thus, "[w]hile evidence of a conspiracy can be totally circumstantial, such evidence must be sufficient, substantial, and independent of the declarations made in order to admit statements by a declarant under the coconspirator exception to the hearsay rule."  
Duckworth
, 180 Ill. App. 3d at 795, 536 N.E.2d at 471.    

In this case, the State argues that Gullette's trial testimony regarding the conspiracy between the six men constitutes sufficient independent evidence of the conspiracy to allow Gullette to also testify as to the statements made by coconspirator Norman Williams.  The State urges that Gullette's own knowledge of the conspiracy is sufficient independent evidence upon which to establish the foundation for admission of coconspirator Williams' statements.  In contrast, defendant argues that in the absence of any independent evidence of his participation in the conspiracy, admission of the coconspirator statements by Norman Williams, as testified to by coconspirator Gullette, improperly bolsters 
defendant's
 
participation
 in the conspiracy.

Prior Illinois cases considering the coconspirator exception to the hearsay rule and its independent evidence requirement all locate a distinct source for the conspiracy evidence independent of the declarations made.  Thus, circumstantial evidence of the conspiracy and defendant's participation has been provided by the testimony of undercover and surveillance police officers (
People v. Goodman
, 81 Ill. 2d 278, 281, 408 N.E.2d 215, 216 (1980); 
People v. Roppo
, 234 Ill. App. 3d 116, 122, 599 N.E.2d 974, 979 (1992)) and by other individuals whom defendant told of his participation (
People v. Ramey
, 151 Ill. 2d 498, 527, 603 N.E.2d 519, 530 (1992)).  Direct testimony by coconspirators has been sufficient when more than one testify (
People v. Byron
, 164 Ill. 2d 279, 292, 647 N.E.2d 946, 952 (1995); 
People v. Jackson
, 281 Ill. App. 3d 759, 771-72, 666 N.E.2d 854, 863-64 (1996) (five gang members testified); 
People v. Columbo
, 118 Ill. App. 3d 882, 946-97, 455 N.E.2d 733, 780 (1983) (two witnesses solicited to commit the murders testified)), or when supported by other witness testimony (
People v. Steidl
, 142 Ill. 2d 204, 234, 568 N.E.2d 837 (1991); 
People v. Spears
, 256 Ill. App. 3d 374, 380, 628 N.E.2d 376, 380-81 (1993) (victim's testimony corroborated coconspirators's testimony)
; 
People v. Ervin
, 226 Ill. App. 3d 833, 842, 589 N.E.2d 957, 964 (1992)).  

Even in cases in which the defendant's acts constitute circumstantial evidence of his participation in the conspiracy, the evidence of those acts is often testified to by a source outside of the conspiracy.  
People v. Martinez
, 278 Ill. App. 3d 218, 224, 227, 662 N.E.2d 473, 476-77, 478 (1996); 
Kabakovich
, 245 Ill. App. 3d at 947, 615 N.E.2d at 858; 
People v. Roppo
, 234 Ill. App. 3d 116, 125, 599 N.E.2d 974, 980 (1992).  But see 
People v. Darnell
, 214 Ill. App. 3d 345, 362-63, 573 N.E.2d 1252, 1263 (1990) (defendants' appearance at crime scene was insufficient to establish their knowledge that a crime was being committed or their participation); 
People v. Duckworth
, 180 Ill. App. 3d 792, 795, 536 N.E.2d 469, 472 (1989) (same proposition).

We have found no Illinois case in which the uncorroborated trial testimony of a single coconspirator provided the independent foundation necessary for admission of a third coconspirator's statements, as testified to by the in-court coconspirator, against the defendant.  See, 
e.g.
, 
People v. Swerdlow
, 269 Ill. App. 3d 1097, 1101, 647 N.E.2d 1040, 1043 (1995) (holding tape-recorded statements by the other coconspirators to the withdrawn coconspirator admissible provided the State could lay the proper foundation by independent proof of a conspiracy).  That being said, we nevertheless find from the totality of the circumstances that there was sufficient, independent evidence of the conspiracy and defendant's participation to allow admission of the coconspirator statements.  
People v. Pintos
, 172 Ill. App. 3d 1096, 1105-06, 527 N.E.2d 312, 318 (1988).

At trial, the State presented evidence of an armed robbery conducted by several men, a statement by defendant indicating his presence at the crime, and Gullette's in-court testimony implicating defendant.  Five eyewitnesses to the robbery gave testimony tending to corroborate Gullette's placement of the conspirators in the bar and the division of labor implying that directions had been given beforehand.  

Although defendant is correct that no eyewitness identified defendant as a participant, the circumstantial evidence of defendant's involvement was provided by defendant's own statement made at the police station.  Defendant's statement indicated his knowledge of the nature of the crime, the location and character of the establishment, and that multiple defendants were involved.  These implications, combined with defendant's presence, imply his participation in the conspiracy agreement.  

And finally, when considered with Gullette's in-court recitation of the conspiracy, we find the totality of circumstantial evidence provided a sufficient foundation to allow the coconspirator statements of Norman Williams.  Moreover, Gullette's accomplice testimony, standing alone, was sufficient to support defendant's conviction.  
People v. Steidl
, 142 Ill. 2d 204, 226-27, 568 N.E.2d 837, 845 (1991), citing 
Jimerson
, 127 Ill. 2d at 44, 535 N.E.2d at 903.  Thus, the circuit court did not err by allowing Gullette to testify regarding statements made by Norman Williams in furtherance of the conspiracy.

Finally, defendant objects to certain statements made by the prosecutor in closing arguments.  Specifically, defendant challenges the prosecutor's comments regarding defendant's statement to Officer Epich including his suggestion that the jury did not have to determine why the statement was not in the arrest report.  Defendant further contends that the prosecutor improperly vouched for Larry Gullette's credibility.  In contrast, the State asserts that defendant has waived any error as no objections were registered at trial or in defendant's post-trial motion.  
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129 (1988).  We agree with the State that no errors were made in the prosecutor's closing argument and certainly none that rise to the level of plain error pursuant to Supreme Court Rule 615.  134 Ill. 2d R. 615.
  

Prosecutors are given wide latitude in closing arguments to make all reasonable inferences based on the evidence.  
People v. Cloutier
, 156 Ill. 2d 483, 507, 622 N.E.2d 774, 786-87 (1993).  The prosecutor's interpretation of defendant's statement as admitting his participation in the robbery is reasonably inferable from the evidence.  Moreover, the prosecutor did not mislead the jury as to its role in assessing the truth or weight to be assigned to defendant's alleged statement.  And finally, the prosecutor did not improperly vouch for the credibility of Gullette's trial testimony which was called into issue time and again.  The State argued fairly that Gullette was a bad man and received a deal from the State.  The jury understood its role in assigning the weight attributable to such testimony.  The complained- of statements during the State's closing arguments did not constitute error, let alone plain error. 

Affirmed.

HOFFMAN, P.J., and HARTMAN, J., concur.